OPINION
{¶ 1} This is an appeal by defendant-appellant, Timothy M. Glass, from a judgment of the Franklin County Court of Common Pleas, denying appellant's motion to withdraw a guilty plea.
 {¶ 2} On October 22, 2003, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11. The charges arose out of an altercation between appellant and James Clark on July 29, 2003. The indictment alleged that appellant assaulted Clark with a wrench during the incident.
 {¶ 3} Appellant initially entered a not guilty plea. However, on June 8, 2004, he appeared before the trial court and withdrew that plea, entering instead a guilty plea to one count of aggravated assault as a "stipulated, agreed, lesser-included offense" of Count 1. At that time, the state requested that Count 2 of the indictment be dismissed.
 {¶ 4} At the plea hearing, the prosecution gave the following account of the events of July 29, 2003. On that date, appellant and Clark, both contractors, were working at a residence located at 6371 Windbrush Lane. The residence had some newly refinished hardwood floors, and Clark believed appellant had tracked paint onto the floors. When Clark approached appellant about the tracks, the two men got into a shoving match and exchanged obscenities.
 {¶ 5} Eventually, both men went outside to the driveway area where a fight ensued. During the altercation, appellant placed Clark in a choke hold, and Clark passed out, falling to the ground. Clark then withdrew from the fight, and went back into the house, but a further altercation took place in the garage, at which time appellant struck Clark in the face with a wrench.
 {¶ 6} At the close of the plea proceedings, the trial court found appellant's plea to be voluntary, and further found him guilty of aggravated assault, in violation of R.C. 2903.12. The court ordered a pre-sentence investigation ("PSI"), and set the sentencing hearing date.
 {¶ 7} Also during the June 8, 2004 proceedings, counsel for appellant, Anthony Mancuso, engaged in the following colloquy with the trial court:
MR. MANCUSO: NORMALLY IN THESE CASES, WE RESERVE ALL COMMENTS ABOUT SENTENCING UNTIL THE SENTENCING. HOWEVER, THE COURT KNOWS WE'VE ENGAGED IN SOME PRELIMINARY DISCUSSIONS ABOUT THE POSSIBLE SENTENCE THAT THE COURT'S CONSIDERING, AND EVEN THOUGH WE UNDERSTAND IT'S NOT A PROMISE AND THE COURT DOES NOT NECESSARILY HAVE TO FOLLOW THAT AND ALL THE RULES THAT GO ALONG WITH THAT, I'VE EXPLAINED TO MR. GLASS THE COURT'S DISCUSSIONS IN CHAMBERS AND THAT THE COURT RIGHT NOW IS INCLINED TO IMPOSE TEN DAYS IN WORK RELEASE ON THIS CASE AND POTENTIALLY, DEPENDING ON THE PSI, ORDER ANGER MANAGEMENT COUNSELING AND A STAY-AWAY ORDER FROM MR. CLARK.
AND DOES THE COURT CONFIRM THAT THAT'S ESSENTIALLY BEEN —
THE COURT: WHAT I'VE WRITTEN ON THE INSIDE OF THE FOLDER IS COMMUNITY CONTROL LIKELY, TEN DAYS WORK RELEASE, ANGER MANAGEMENT, ONE TO TWO YEARS COMMUNITY CONTROL, EX-WIFE IS A PROBLEM, NO VIOLENCE OF ANY KIND, STAY AWAY FROM THE VICTIM.
MR. MANCUSO: YOUR HONOR, FOR MR. GLASS'S PURPOSES, YOU WROTE EX-WIFE IS A PROBLEM. HE — THE COURT: YEAH, SHE'S A PROBLEM. YOU HAD INDICATED THAT SHE IS LIKELY TO CAUSE US GRIEF, SO THAT'S WHY I'VE WRITTEN SHE IS A PROBLEM.
MR. MANCUSO: OKAY. SO, IN OTHER WORDS, THEN THE COURT WILL CONSIDER ANY ALLEGATION MADE BY HER IN DUE COURSE IF THERE'S AN ALLEGED VIOLATION OF COMMUNITY CONTROL, CORRECT?
THE COURT: WELL, IT'LL HAVE TO RISE TO A LEVEL OF A CONVICTION BEFORE I GET EXCITED. * * *
(Tr. June 8, 2004, at 10-12.)
 {¶ 8} On August 19, 2004, the trial court conducted the sentencing hearing. At the hearing, defense counsel described appellant as someone who, in his youth, "ran the streets, that was a troublemaker. I'll flat out say he was on the wrong path." (Tr. Aug. 19, 2004, at 6.) Counsel maintained, however, that appellant had turned his life around, and was currently a successful business owner.
 {¶ 9} Defense counsel also raised the issue of the contents of the PSI report, stating in part:
YOUR HONOR, I READ THE PSI IN DETAIL, AND I KNOW THE COURT AND ALL THE PARTIES INVOLVED HAD AN OPPORTUNITY TO READ IT TOO. GRANTED, IT DID NOT READ WELL.
HOWEVER, I THINK IT'S REAL IMPORTANT HERE — AND I KNOW TIM WANTS TO COMMENT ON IT — A LOT OF THE STUFF THAT DID NOT READ WELL OCCURRED PRIOR TO HIM CHANGING HIS LIFE AROUND. IT OCCURRED IN THE 1990'S. IT OCCURRED WHILE HE WAS MARRIED TO — IN A SITUATION THAT WAS NOT GOOD FOR HIM, THAT THE INCIDENTS THAT WERE RELATED IN THE PSI IN TERMS OF HIS RECORD WERE MANY INSTANCES THAT WERE, IN FACT, DISMISSED IN COURT AND PROBABLY WERE — ALL OF THEM, AS A MATTER OF FACT, EXCEPT ONE WERE MOTIVATED BY HIS EX-SPOUSE THAT HE IS DIVORCED FROM NOW.
NOW, YOUR HONOR, I KNOW THE COURT HAS GIVEN US A TREMENDOUS AMOUNT OF CONSIDERATION IN DISCUSSING THIS MATTER PRIOR TO THE PLEA AND ALSO PRIOR TO THE SENTENCING TODAY. WHAT'S DIFFICULT FOR TIM AS A DEFENDANT HERE IS HE ENTERED THE — THIS PLEA TO AVOID THE CONSEQUENCES OF TRIAL, AND WE WERE KIND OF GIVEN A COMMITMENT AS TO MAYBE WHAT THE COURT MIGHT DO.
THE COURT: YOU WERE GIVEN AN INDICATION OF WHAT THE COURT MIGHT DO.
MR. MANCUSO: AN INDICATION OF WHAT THE COURT MIGHT DO.
AFTER READING THE PSI AND AFTER READING A LOT OF THE PAST MATTERS THAT SHOWED UP IN THE PSI, THE COURT HAS INDICATED TO US IN PRESENTENCING DISCUSSIONS THAT THEY INTEND ON DOING A LITTLE MORE THAN WHAT WAS INDICATED AT THE PLEA HEARING. * * *
(Tr. Aug. 19, 2004, at 7-8.)
 {¶ 10} Defense counsel then requested that appellant be provided the opportunity to speak, and the court granted that request. The court also heard several acquaintances of appellant speak on his behalf.
 {¶ 11} The victim, Clark, was also given the opportunity to speak at the sentencing hearing, and he related his version of the incident. According to Clark, he was knocked unconscious twice during the altercation, and he also fled the scene twice, retreating to the house, "and each time Mr. Glass was given the opportunity to leave the scene, which he chose not to, and did follow me into the home the second time and did attack me with a wrench when he had every opportunity to leave." (Tr. Aug. 19, 2004, at 19.) As a result of the altercation, Clark's injuries, which included a concussion and an orbital lobe fracture, prevented him from working for six weeks. He also related that his front teeth "were completely broken in half." (Tr. Aug. 19, 2004, at 19.)
 {¶ 12} At the close of the hearing, the trial court announced a sentence of two years of community control, including 60 days in work release. The trial court filed its judgment entry reflecting the above sentence on August 23, 2004.
 {¶ 13} On September 9, 2004, appellant, through new counsel, filed a motion to withdraw his guilty plea. In the accompanying memorandum in support, appellant argued that he entered the plea agreement with the understanding that his ex-wife, Bobbie Bradshaw, would have no involvement in the case. Appellant further argued that, prior to sentencing, his counsel assured him that Bradshaw did not play a role in the information obtained for the PSI. However, after appellant was sentenced, his counsel learned she had provided information to the probation officer who prepared the PSI. Appellant argued that his ex-wife played a very significant role in the preparation of the PSI, providing the trial court with information that it relied upon to "change its opinion about the agreed upon sentence."
 {¶ 14} Appellant further maintained that, had he known it was possible he would receive 60 days work release, or that his ex-wife would factor into the sentencing process, he would not have entered the guilty plea. Attached to the motion were the affidavits of appellant and his trial counsel. In his affidavit, attorney Mancuso averred in part that he steered his client away from withdrawing his guilty plea, just prior to sentencing, because "I thought that if the ex-wife did not play a role in the psi report as I was assured, we had a chance to get the Judge back to the ten days with work release." (Mancuso Affidavit, at ¶ 8.) Counsel further averred: "If I had known the ex-wife did play a role in the psi, I believe Mr. Glass would have moved to withdraw his plea and I would not have pushed him away from withdrawing his plea." (Mancuso Affidavit, at ¶ 8.)
 {¶ 15} On September 16, 2004, the trial court conducted a hearing on the motion. The court heard the testimony of appellant, as well as his trial counsel, Mancuso, and Philip Enright, a friend of appellant's. The state presented the testimony of Eileen Richesson, an employee of the Ohio Adult Parole Authority, who prepared the PSI. On September 22, 2004, the trial court filed a decision and entry denying appellant's motion to withdraw his guilty plea.
 {¶ 16} On appeal, appellant sets forth the following two assignments of error for review:
FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN REFUSING TO ALLOW APPELLANT TO WITHDRAW HIS GUILTY PLEA AFTER THE TERMS AND CONDITIONS OF THE PLEA CHANGED. SAID ERROR DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW AND THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.
SECOND ASSIGNMENT OF ERROR
APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL DID NOT PERMIT HIS CLIENT TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING. SAID ERROR DEPRIVED APPELLANT OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.
 {¶ 17} Under his first assignment of error, appellant contends that the trial court erred in failing to allow him to withdraw his guilty plea after the terms and conditions of the plea changed. Appellant maintains that, while he was reluctant to accept the plea, he agreed to do so based upon an agreement that he would not receive more than ten days in jail.
 {¶ 18} Crim.R. 32.1 provides that a motion to withdraw a guilty plea "may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Ohio courts have noted that "[w]hat constitutes `manifest injustice' has been `variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases.'" State v. Rittner,
Fulton App. No. F-050-03, 2005-Ohio-6526, at ¶ 28, quoting Statev. Smith (1977), 49 Ohio St.2d 261, 264. In general, "`manifest injustice relates to some fundamental flaw in the proceedings which result in a miscarriage of justice or is inconsistent with the demands of due process.'" State v. Wooden, Franklin App. No. 03AP-368, 2004-Ohio-588, at ¶ 10, quoting State v. Hall,
Franklin App. No. 03AP-433, 2003-Ohio-6939. Further, whether a movant has demonstrated a manifest injustice is addressed to the sound discretion of the trial court, and the court's denial of a motion to withdraw a guilty plea will not be reversed absent an abuse of discretion. Rittner, at ¶ 28.
 {¶ 19} Regarding appellant's purported expectation of a ten-day work release, the trial court found there was "no agreement among the prosecutor, defense counsel, and the Court that the defendant would positively receive ten days in work release." The trial court thus found that any such expectation on the part of appellant did not rise to the level of manifest injustice.
 {¶ 20} Upon review, we agree with the trial court that the record in this case fails to support appellant's contention that the plea was based upon an unqualified agreement that he would receive no more than a ten-day sentence. In the present case, appellant signed a guilty plea form noting his understanding that the maximum prison term was 18 months, and he stated at the June 8, 2004 hearing that he understood the possible penalties, and that he was not promised anything to change his plea. The transcript of the plea proceedings, including his counsel's own representations, belies appellant's claim that the court guaranteed a particular sentence. Defense counsel acknowledged, at the time of the plea, that there had been only "preliminary discussions about the possible sentence," and that "we understand it's not a promise and the court does not necessarily have to follow that." (Tr. June 8, 2004, at 11.) Counsel further acknowledged, on the record, that he "explained to Mr. Glass the court's discussions in chambers and that the court right now is inclined to impose ten days in work release on this case." (Tr. June 8, 2004, at 11.) In response, the court emphasized that it had written in the folder merely the "likely" sentence.
 {¶ 21} At the subsequent sentencing hearing, defense counsel again raised the issue of what the court "might" do in terms of a sentence. (Tr. Aug. 19, 2004, at 8.) The court made clear at that time that appellant and counsel had only been given "an indication of what the court might do." (Tr. Aug. 19, 2004, at 8.) Defense counsel did not dispute the trial court's recollection of the earlier discussions.
 {¶ 22} Here, the record indicates that appellant understood the possible range of sentences, and that, while there had been discussions that the court was "inclined," prior to the sentencing hearing (and reviewing the PSI), to impose ten days of work release, the court never promised appellant that it would impose such a sentence. We also note that appellant was aware, at the time of the sentencing hearing, that the court was no longer inclined to impose ten days, but appellant nevertheless "failed to avail himself of the opportunity to disclose the source or circumstances of the alleged promise or to request the withdrawal of his pleas." State v. Evans (Aug. 16, 1995), Hamilton App. No. C-940775 (rejecting appellant's claim that guilty pleas were induced by unfulfilled promise where such claim arose, not at plea hearing, but at sentencing hearing after court had accepted pleas and imposed sentence). Under the circumstances of the present case, appellant's motion to withdraw his guilty plea, based upon the claim he received a greater sentence than he was promised, failed to demonstrate a manifest injustice.
 {¶ 23} Appellant also asserts that there existed an understanding with the court that his ex-wife, Bradshaw, would play no role in the PSI process. Appellant argues that his defense counsel was under the mistaken belief Bradshaw had no such involvement, but that counsel subsequently learned, after sentencing, that Bradshaw had submitted materials used for the PSI. Appellant contends, therefore, that the trial court should have allowed him to withdraw his plea because Bradshaw's input into the PSI influenced the court's decision to sentence him to more than ten days work release.
 {¶ 24} At the outset, we agree with the state that the record does not support appellant's assertion that there was an agreement with the court whereby Bradshaw would have no involvement in the preparation of the PSI. Rather, at the June 8, 2004 hearing, defense counsel did not raise the issue of Bradshaw's involvement in the PSI, but, instead, expressed concern about "any allegation made by her in due course if there's an alleged violation of community control." (Tr. June 8, 2004, at 11-12.) In its decision and entry denying the motion to withdraw, the trial court found that "nothing was ever mentioned about any input the ex-wife may or may not have on the information contained in the PSI." This court's review of the record supports the trial court's determination on this issue.
 {¶ 25} Even assuming, however, that the issue of the ex-wife's involvement in the PSI had been discussed, we would find no abuse of discretion by the trial court in denying the motion to withdraw. As previously noted, at the hearing on appellant's motion to withdraw his guilty plea, the trial court heard the testimony of Richesson, the author of the PSI. As part of her preparation for writing the PSI, Richesson conducted an interview with appellant. Richesson related that, during that interview, she believed appellant was not being totally honest in some of his responses. For instance, while appellant indicated to Richesson that he had a few traffic violations, when she reviewed his records there were at least 25 traffic-related items. Appellant further failed to reveal several different addresses in different counties. Also during the interview, appellant asked Richesson whether it would be necessary for her to contact his ex-wife.
 {¶ 26} Following the interview, Richesson contacted various agencies from several different counties to obtain information regarding appellant. Specifically, Richesson contacted the Roseville Police Department, the Muskingum County Sheriff's Department, the Muskingum County Prosecutor's Office, the Perry County Sheriff's Department, the Perry County Prosecutor's Office, the New Lexington Police Department, the Zanesville Police Department, the City of Zanesville's website, the City of New Lexington's website, the Muskingum County Probation Department, the Muskingum County Clerk's Office, the Perry County Clerk's Office, the Ohio Bureau of Motor Vehicles, the Franklin County Clerk's Office, the Grove City Police Department, the Worthington Police Department, and Muskingum County Children Services.
 {¶ 27} Richesson subsequently put together a report, and, while she eventually spoke with appellant's ex-wife, stated that the report was prepared prior to that time. Specifically, Richesson testified that she did not talk with Bradshaw until "after I had concluded my report" and turned it in for typing. (Tr. Sept. 16, 2004, at 129.) According to Richesson, she spoke with Bradshaw because of three charges involving a violation of a protective order; therefore, Richesson called to "verify that she was the victim and there was not an unknown victim or another charge which I was not aware." (Tr. Sept. 16, 2004, at 130.)
 {¶ 28} Bradshaw informed Richesson that she had copies of some of the reports, and Bradshaw subsequently came to the probation department and dropped them off, along with a journal. Richesson, however, did not use the journal in the PSI "because it had no bearing on his behavior in this offense." (Tr. Sept. 16, 2004, at 131.) Richesson testified that the copies Bradshaw provided were certified reports "that corresponded to the information I already had as my verification." (Tr. Sept. 16, 2004, at 132.)
 {¶ 29} During the hearing, Richesson was questioned about certain allegations in the PSI that appellant claimed came from information obtained from his ex-wife. On direct examination, Richesson testified that a report indicating that the offender solicited a prostitute was obtained from the prosecutor's office, while another report that the offender approached a vehicle with a club or stick was obtained from the Zanesville Police Department. On cross-examination, Richesson testified that information in the PSI indicating that appellant once attempted suicide while in jail came from appellant himself during their interview. Similarly, appellant told Richesson that he had not paid taxes for three years. According to Richesson, "nothing she [Bradshaw] gave me did I use just strictly because she provided it to me." (Tr. Sept. 16, 2004, at 136.) Rather, Richesson stated Bradshaw had no substantive input at all in the preparation of the PSI.
 {¶ 30} Based upon the testimony provided, including a consideration of the credibility of the PSI writer, the trial court found that "the PSI writer had only nominal contact with [appellant's] ex-wife," and that such contact "had no impact on either the PSI writer or the PSI." In so holding, the trial court found credible the PSI writer's statements about the ex-wife's role as it pertained to the preparation of the PSI. As the trier of fact, it was within the province of the trial court to weigh the evidence and judge the credibility of the witnesses.Rittner, at ¶ 74, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Upon review, we accord due deference to the trial court's determination on this issue, and we find no error by the court in holding that appellant's PSI "was totally unaffected by any actions of his ex-wife."
 {¶ 31} Based upon the foregoing, the trial court did not abuse its discretion in denying appellant's post-sentence motion to withdraw his guilty plea as appellant failed to establish a manifest injustice. Accordingly, appellant's first assignment of error is without merit and is overruled.
 {¶ 32} Under his second assignment of error, appellant asserts that his defense counsel was ineffective in failing to let him withdraw his guilty plea. Appellant argues that he expressed a desire to his counsel to withdraw his plea at the time of the sentencing hearing when he became aware the court was contemplating sentencing him to more than ten days in jail. Appellant also contends he wanted to withdraw his plea after his counsel discussed with him the contents of the PSI, leading appellant to believe his ex-wife was involved in the preparation of that report. Appellant maintains that his defense counsel, laboring under the misapprehension that appellant's ex-wife played no role in the PSI process, steered him from seeking to withdraw his plea. Appellant argues that defense counsel later acknowledged that, had he known the ex-wife was involved in the PSI, his advice to appellant would have been to seek to withdraw his plea at the time of the sentencing hearing.
 {¶ 33} In order to succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, and that such deficiency prejudiced his defense. State v. Curd, Lake App. No. 2003-L-030,2004-Ohio-7222, at ¶ 109. In the context of a guilty plea, however, "a defendant must also demonstrate that there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at ¶ 110. Further, "[t]o prove ineffective assistance on the basis of a failure to file a particular motion, a defendant must establish that the motion stood a reasonable probability of success." State v. Adkins, Athens App. No. 04CA34, 2005-Ohio-2577, at ¶ 14.
 {¶ 34} As noted, appellant contends he informed his counsel that he wanted to withdraw his plea after learning the trial court was contemplating sentencing him to more than ten days in jail. At the outset, we note that courts have held that, "where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel." Wiant v.United States (S.D.Ohio 2005), No. 2:04-CV-256. See, also,United States v. Martinez (C.A.7, 1999), 169 F.3d 1049, 1053 ("an attorney's `mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel claim").
 {¶ 35} Even assuming appellant could somehow demonstrate that his counsel's advice regarding his sentence constituted deficient performance, appellant cannot show prejudice. We have previously noted, in addressing the first assignment of error, that the record demonstrates appellant's plea was not based upon a promise of ten days work release. See City of Westlake v. Barringer
(Dec. 24, 1998), Cuyahoga App. No. 73774 (a defendant cannot succeed on a motion to withdraw a guilty plea based on erroneous advice of counsel where appellant acknowledged at plea hearing that no promise was made in exchange for plea and court specifically explained the possibility of incarceration).
 {¶ 36} Further, a criminal defendant does not have an absolute right to withdraw a guilty plea prior to sentencing.State v. Yander, Franklin App. No. 05AP-38, 2005-Ohio-5538, at ¶ 16. Thus, "trial counsel is only ineffective for failing to act on a motion to withdraw a guilty plea where a substantial possibility exists that the defendant would be permitted to withdraw his guilty plea." State v. Mooty (Aug. 31, 2001), Greene App. No. 2000 CA 72.
 {¶ 37} Ohio courts have consistently held that a change of heart is deemed insufficient to justify withdrawing a guilty plea, especially where the change of heart is based upon the defendant learning what sentence a court is going to impose.State v. Davis (Jan. 5, 2001), Montgomery App. No. 18172. See, also, Mooty, supra (defendant's motion to withdraw his guilty plea "was based solely on an unexpected incarceration sentence, a mere change of heart," and as such was an insufficient rationale to withdraw a guilty plea); State v. Brooks, Franklin App. No. 02AP-44, 2002-Ohio-5794, at ¶ 51 ("[a] defendant's change of heart or mistaken belief about the guilty plea or expected sentence does not constitute a legitimate basis that requires the trial court to permit the defendant to withdraw the guilty plea"). In the present case, appellant cannot show that the trial court would have permitted him to withdraw his plea prior to sentencing based upon his belief that the court guaranteed him a ten-day sentence, and appellant therefore cannot satisfy the prejudice prong of his ineffective assistance claim.
 {¶ 38} Similarly, appellant cannot demonstrate that he was prejudiced by the failure of his counsel to seek withdrawal of the plea based upon the contention that his ex-wife's involvement in the PSI process affected the court's sentencing decision. Even assuming that trial counsel was mistaken about Bradshaw providing information to the PSI author, as already discussed, the record supports the trial court's finding that any information provided by Bradshaw did not impact the contents of the report, and, therefore, her actions did not influence the court's decision to impose a more severe sentence than was initially discussed. Thus, to the extent appellant contends his trial counsel should have agreed to seek a pre-sentence motion to withdraw the guilty plea because of Bradshaw's purported conduct, there is no reasonable probability that the trial court would have granted such motion. Accordingly, we reject appellant's claim of ineffective assistance of counsel.
 {¶ 39} Appellant's second assignment of error is without merit and is overruled.
 {¶ 40} Based upon the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt, P.J., and French, J., concur.