OPINION
{¶ 1} Defendant-appellant, David Yander, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court denied appellant's motion to withdraw his guilty plea and sentenced appellant on his aggravated vehicular homicide and aggravated vehicular assault convictions.
 {¶ 2} On December 3, 2002, the Franklin County Grand Jury indicted appellant on two counts of aggravated vehicular homicide, in violation of R.C. 2903.06. One aggravated vehicular homicide count constituted a first-degree felony and one count constituted a second-degree felony. The grand jury also indicted appellant on two counts of aggravated vehicular assault, in violation of R.C. 2903.08. One aggravated vehicular assault count constituted a second-degree felony and one count constituted a third-degree felony. Next, the grand jury indicted appellant on two counts of operating a motor vehicle while under the influence of alcohol or drugs, first-degree misdemeanors, in violation of R.C. 4511.19, and one count of receiving stolen property, a fourth-degree felony, in violation of R.C. 2913.51. The charges stem from appellant causing Cynthia Roberts' death and Jerry Roberts' significant injuries through an automobile accident while appellant operated a motor vehicle under a suspended license and while under the influence of alcohol with a prohibited amount of alcohol in his system.
 {¶ 3} Appellant originally pled not guilty to the charges and his defense counsel filed a motion to suppress evidence pertaining to the amount of alcohol in appellant's system at the time of the accident. The trial court held a hearing on the motion on July 7 and 8, 2004, but did not rule on the motion because, on July 26, 2004, appellant pled guilty during a Crim.R. 11 plea hearing. Appellant pled guilty to one count of first-degree felony aggravated vehicular homicide, one count of second-degree felony aggravated vehicular assault, and one count of first-degree misdemeanor operating a motor vehicle under the influence of alcohol or drugs. In exchange for appellant's guilty plea, plaintiff-appellee, the State of Ohio, dismissed the remaining charges.
 {¶ 4} During the plea hearing, appellant told the trial court that he was voluntarily pleading guilty. Appellant also told the trial court that he understood the maximum authorized prison terms on each offense for which he was pleading guilty. Likewise, appellant confirmed that he was aware of the degrees of felonies with which appellee charged him. In addition, appellant signed a guilty plea form where he indicated that he understood the maximum authorized prison term for the offenses subject to his guilty plea and affirmed that he was voluntarily pleading guilty. The trial court accepted appellant's guilty plea, found appellant guilty on the above-noted charges, ordered a pre-sentence investigation report, and scheduled a sentencing hearing for September 28, 2004.
 {¶ 5} Thereafter, the probation officer writing the pre-sentence investigation report indicated in the report that appellant "states he is withdrawing his guilty plea because he doesn't feel he was charged properly under the circumstances." The pre-sentence investigation report also denotes that appellant had previous traffic offenses and a probation violation.
 {¶ 6} On September 13, 2004, appellant's defense counsel filed a motion to withdraw appellant's guilty plea and, on September 28, 2004, the trial court held a hearing on the motion. At the hearing, appellant testified to the following. Appellant decided to withdraw his guilty plea "days" after he entered the plea. (Vol. II Tr. at 9.) On the day that appellant pled guilty, appellant's wife had recently filed for divorce. Appellant also "realized [his] mom and [a] couple of [his] brothers were in the hospital, [and] one of [his] nephews was having brain surgery." (Vol. II Tr. at 6.) These events occurred within "a day and a half" before appellant entered his guilty plea. (Vol. II Tr. at 6.) Thus, according to appellant, his "emotional state wasn't with [him] that day" he pled guilty. (Vol. II Tr. at 8.) Appellant also noted that he entered the guilty plea because he "wanted to get some of this pressure off [him]." (Vol. II Tr. at 8.)
 {¶ 7} Moreover, according to appellant, on the day that he pled guilty, he had just discussed with his defense counsel about "not making the Roberts' family have to go through a trial[.]" (Vol. II Tr. at 8.) Additionally, appellant recalled from talking with his defense counsel, "from our research and from things we've had to go through and talk about, it seemed like it's going to be a pretty rough situation and I [didn't] see any winner in it." (Vol. II Tr. at 8.) Furthermore, according to appellant, while at court before pleading guilty, appellant discussed with his family members the possible sentences that the trial court could impose on the charges.
 {¶ 8} On cross-examination, appellant stated that appellee did not file proper charges against him. However, appellant admitted that he has "been aware of exactly what the facts were and exactly what the charges were for about two years[.]" (Vol. II Tr. at 13.) Appellant also admitted that he did not inform the trial court of his emotional state when he pled guilty. Lastly, appellee asked if appellant thought his defense counsel was providing satisfactory representation, and appellant responded that his defense counsel was "doing fine." (Vol. II Tr. at 16.)
 {¶ 9} In arguing in favor of the plea withdrawal motion, appellant's defense counsel mentioned, in part, that he had challenged, through suppression motions, evidence pertaining to the level of alcohol in appellant's system when the accident occurred. In opposing the plea withdrawal motion, appellee argued that the trial court should consider, among other things, that appellant's defense counsel was "highly competent[.]" (Vol. II Tr. at 34.) Appellee reasoned that appellant's defense counsel "is very well experienced" and filed "complicated motions" resulting in "two full days of motion hearings." (Vol. II Tr. at 35.)
 {¶ 10} At the end of the plea withdrawal hearing, the trial court indicated that it would take the motion "under advisement." (Vol. II Tr. at 37.) Subsequently, on December 23, 2004, the trial court issued a judgment entry that denied appellant's guilty plea withdrawal motion. The trial court indicated that it:
* * * [C]an only find one reason why [appellant] * * * wishes to withdraw his plea. That reason is explained that he was served with divorce papers by his wife shortly before his decision and that he was a bit down from that.
* * * The court finds [appellant's] testimony about the domestic filing having an impact on his emotion to the extent that it affected the voluntariness of the plea be less than credible. * * *
 {¶ 11} Afterward, on December 28, 2004, the trial court sentenced appellant to six years imprisonment for aggravated vehicular homicide, five years imprisonment for aggravated vehicular assault, and six months imprisonment for operating a motor vehicle under the influence of alcohol or drugs. The trial court imposed sentences on the felonies above the authorized minimum prison sentence set forth in Ohio's felony sentencing statute. In discussing its decision to impose non-minimum sentences, the trial court first acknowledged that appellant "is expressing genuine remorse and [appellant] does not have a history of alcohol-impaired driving" offenses, and appellant had no "prior cases that have resulted in a prison sentence[.]" (Vol. III Tr. at 21-22.) However, the trial court decided that appellant's case warranted non-minimum sentences because appellant was driving "with the significant alcohol content" under a suspended license and traveling "82 to 92 miles per hour over * * * a busy freeway" at night. (Vol. III Tr. at 22.) The trial court also noted that appellant engaged in "belligerent behavior throughout the evening[.]" (Vol. III Tr. at 22.) Lastly, the trial court recognized that "there are two victims, one seriously and permanently injured and the other deceased, and it's had tremendous impact on this family, negative impact with respect to the family." (Vol. III Tr. at 22.)
 {¶ 12} The trial court ordered appellant to serve the felony sentences consecutively. In imposing consecutive sentences, the trial court stated, in part:
There is * * * the matter of [appellant's] criminal history, though not involving alcohol, it does — it may impact on this consecutive sentencing question, because there is some evidence of driving offenses with a probation violation * * * and to the extent that [appellant's] license was suspended * * * is an indication of some disregard here for the public with these traffic offenses and then violating the probation terms and ending up with [appellant's] license being ultimately suspended * * *.
(Vol. III Tr. at 23-24.)
 {¶ 13} Appellant appeals, raising three assignments of error:
ASSIGNMENT OF ERROR NUMBER ONE
THE DEFENDANT'S GUILTY PLEA WAS NOT KNOWINGLY AND VOLUNTARILY GIVEN AND THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO WITHDRAW HIS PLEA, WHICH WAS MADE BEFORE SENTENCING.
ASSIGNMENT OF ERROR NUMBER TWO
THE TRIAL COURT ERRED WHEN IT IMPOSED SENTENCES GREATER THAN THE SHORTEST PRISON TERMS AUTHORIZED FOR THE OFFENSES OF AGGRAVATED VEHICULAR HOMICIDE AND AGGRAVATED VEHICULAR ASSAULT IN THE ABSENCE OF ANY FACTS, EITHER ADMITTED BY THE DEFENDANT OR FOUND BY A JURY, THAT WOULD HAVE ALLOWED THE TRIAL COURT TO DEPART FROM ITS OBLIGATION TO IMPOSE THE SHORTEST PRISON TERM UPON AN OFFENDER WHO HAD NEVER SERVED A PREVIOUS PRISON TERM PURSUANT TO R.C. 2929.14(B).
ASSIGNMENT OF ERROR NUMBER THREE
THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES ON THE OFFENSES OF AGGRAVATED VEHICULAR HOMICIDE AND AGGRAVATED VEHICULAR ASSAULT IN THE ABSENCE OF ANY FACTS, EITHER ADMITTED BY THE DEFENDANT OR FOUND BY A JURY, THAT WOULD HAVE ALLOWED THE TRIAL COURT TO IMPOSE CONSECUTIVE SENTENCES UNDER R.C. 2929.14(E)(4).
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred by denying his pre-sentence motion to withdraw his guilty plea. We disagree.
 {¶ 15} Under Crim.R. 32.1:
A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
 {¶ 16} "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." State v. Xie (1992), 62 Ohio St.3d 521, 527. "Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." Id. Rather, when, like here, a trial court holds a hearing on a pre-sentence plea withdrawal motion, we will not reverse a trial court's decision to deny the motion absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} "There are numerous * * * factors which should be weighed in considering" a pre-sentence motion to withdraw a guilty plea. State v.Fish (1995), 104 Ohio App.3d 236, 240. In particular, "[a] trial court does not abuse its discretion in overruling a motion to withdraw" a guilty plea where: (1) "highly competent counsel" represented the defendant; (2) the trial court conducted a "full hearing, pursuant to Crim.R. 11," before the defendant entered the guilty plea; (3) the trial court conducted "a complete and impartial hearing" on the plea withdrawal motion; and (4) the trial court gave full and fair consideration to the plea withdrawal request. State v. Peterseim (1980), 68 Ohio App.2d 211, paragraph three of the syllabus. Additional factors include whether: (1) the trial court would prejudice appellee by granting the plea withdrawal; (2) the defendant made the plea withdrawal motion within a reasonable time; (3) the motion sets out specific reasons for the withdrawal; (4) the defendant understood the nature of the charges and possible penalties; and (5) the defendant "was perhaps not guilty of or had a complete defense to the charge or charges[.]" Fish at 240. However, the above list "is not exhaustive, and other factors will appear to trial and appell[ate] courts depending upon the merits of each individual case." Id.
 {¶ 18} In claiming that the trial court erred by not granting his guilty plea withdrawal motion, appellant relies on State v. Griffin
(2001), 141 Ohio App.3d 551. In Griffin, the Seventh District Court of Appeals reversed a trial court's decision to deny a defendant's pre-sentence guilty plea withdrawal motion after the defendant pled guilty to felonious assault as a reduced charge from attempted murder. The appellate court considered the above-noted factors and stated that "the balance scale tilts so far in favor of [the defendant] that the denial of [the defendant's] motion to withdraw his plea was unfair." Id. at 556. One factor that the appellate court recognized was that "prejudice to the state is not articulated and will not be presumed." Id. at 554. The appellate court also noted that the defendant's attorney misinformed him about the sentence that the trial court would impose if the defendant accepted appellee's plea offer. Such misinformation led to the defendant's "uncertainty as to the terms of the plea and the benefit to him." Id. at 556. Furthermore, the appellate court recognized that his defense counsel failed to properly investigate the case. The court noted that, "[a]t the plea withdrawal hearing, [the defendant] informed the court that while in jail, he was told by the brother of [a witness] that [the witness] saw the victim draw a gun first" in accordance with the defendant's original self-defense claim. Id. at 555. According to the appellate court, the defendant, "therefore, has a legitimate reason to doubt the wisdom of his plea in that he was previously informed that [the witness] was going to testify against him but subsequently learned that [the witness's] purported testimony would be consistent with his previously announced defense." Id. Lastly, the trial court acknowledged that the defendant "professed innocence[.]" Id. at 556.
 {¶ 19} However, appellant's reliance on Griffin is misplaced. First, while the record here does not establish whether a plea withdrawal would prejudice appellee, we need not disturb the trial court's decision to deny the plea withdrawal motion given other factors noted below. See State v.Leasure, Belmont App. No. 01-BA-42, 2002-Ohio-5019, at ¶ 19.
 {¶ 20} For instance, unlike Griffin, we cannot conclude that appellant "was perhaps not guilty of or had a complete defense to the charge or charges" to which he pled guilty. See Fish at 240.
* * * The thrust of this consideration is not to force the trial judge to make a declaration about the defendant's guilt or innocence, but rather, to encourage the trial court to examine: 1) whether the defendant is actually claiming to be innocent, or whether the plea withdrawal request is based on a defense which has nothing to do with his or her innocence; 2) whether there are any reasons supporting the defendant's claim of innocence which arose subsequent to the time the defendant entered into the plea agreement; and 3) whether the defendant has any viable evidence or access to any viable evidence to support his or her innocence. * * *
State v. Kramer, Mahoning App. No. 01-C.A.-107, 2002-Ohio-4176, at ¶ 58.
 {¶ 21} In Griffin, the defendant originally claimed self-defense, explained why he could not maintain that argument prior to pleading guilty, and later discovered a witness who would support his self-defense claim. Here, appellant maintains that he does not agree with the charges that appellee filed against him. However, appellant's mere disagreement with the charges did not require the trial court to grant the plea withdrawal motion given the conclusory nature of appellant's assertion, and given that appellant knew about the nature of the charges and facts of his case before he pled guilty. See Kramer at ¶ 58; State v. McNeil
(2001), 146 Ohio App.3d 173, 176; State v. Murphy (Aug. 31, 1995), Cuyahoga App. No. 68129. We also note that appellant's defense counsel challenged, through suppression motions, the evidence pertaining to the level of alcohol in appellant's system during the accident. However, we need not disturb the trial court's decision on the plea withdrawal motion due to such evidentiary challenges because the challenges occurred before appellant pled guilty and did not stem from circumstances that arose "subsequent to the time the defendant entered into the plea agreement[.]" See Kramer at ¶ 58.
 {¶ 22} Next, unlike Griffin, appellant makes no adverse allegations against his defense counsel. Rather, appellant testified during the plea withdrawal hearing that his defense counsel was "doing fine[,]" and appellant does not refute appellee's assertion that his defense counsel was "highly competent[.]" Such factors support the trial court's decision to deny appellant's plea withdrawal motion. See Peterseim at paragraph three of the syllabus.
 {¶ 23} We further acknowledge other Peterseim and Fish factors that establish that the trial court did not abuse its discretion when it denied appellant's plea withdrawal motion. In particular, the trial court held a Crim.R. 11 hearing before it accepted the guilty plea to ensure that appellant voluntarily pled guilty, and appellant does not challenge the substance of the Crim.R. 11 hearing. See Peterseim at paragraph three of the syllabus; see, also, State v. Stone (1975), 43 Ohio St.2d 163,167-168 (holding that a Crim.R. 11 hearing "remedies the problems inherent in a subjective judgment by the trial court as to whether a defendant has intelligently and voluntarily" pled guilty). Moreover, appellant understood the nature of the charges and possible penalties. SeeFish at 240. Specifically, appellant verified on the guilty plea form and at the guilty plea hearing that he understood the maximum prison terms for the pertinent offenses. Likewise, appellant confirmed at the plea hearing that he was aware of the degrees of felonies with which appellee charged him. In addition, appellant testified at the plea withdrawal hearing that he was "aware of exactly what the facts were and exactly what the charges were" when he pled guilty. (Vol. II Tr. at 13.) Lastly, the trial court conducted "a complete and impartial hearing" on the plea withdrawal motion and gave full and fair consideration to the plea withdrawal request. Peterseim at paragraph three of the syllabus.
 {¶ 24} In concluding that the trial court gave full and fair consideration to appellant's plea withdrawal request, we also reject appellant's contention that the trial court abused its discretion by finding appellant's claim, that he did not voluntarily enter the guilty plea due to his "emotional state after being served with divorce papers and having to deal with the hospitalization of his mother and brothers[,]" not credible.
 {¶ 25} The record does not establish that the above personal issues overcame appellant and interfered with his ability to decide whether to plead guilty. Rather, the record establishes that appellant was able to evaluate and discuss the evidence and difficulties of the case before pleading guilty. Specifically, appellant talked with his defense counsel about the case and concluded that, "from our research and from things we've had to go through and talk about, it seemed like it's going to be a pretty rough situation[.]" (Vol. II Tr. at 8.) Additionally, appellant and his defense counsel "talked once again about * * * not making the Roberts' family have to go through a trial[.]" (Vol. II Tr. at 8.) Moreover, before pleading guilty, appellant spoke with his family members about the potential sentences that the trial court could impose on the charges.
 {¶ 26} We also find significant that, when appellant pled guilty, he did not tell the trial court anything regarding his being overcome by his personal problems. Rather, appellant told the trial court that he was voluntarily pleading guilty. Likewise, the pre-sentence investigation report makes no mention of appellant asserting that his guilty plea was involuntary. Rather, appellant told the pre-sentence investigation officer that he wanted to withdraw his guilty plea because he "doesn't feel he was charged properly[.]"
 {¶ 27} At most, appellant had a "change of heart" after pleading guilty; however, "a mere change of heart * * * is insufficient justification" to withdraw a guilty plea, even prior to sentence. Statev. Drake (1991), 73 Ohio App.3d 640, 645, citing State v. Meade (May 22, 1986), Cuyahoga App. No. 50678; State v. Brooks, Franklin App. No. 02AP-44, 2002-Ohio-5794, at ¶ 51. Thus, in light of evidence contradicting appellant's contention that his emotional state compelled him to involuntarily plead guilty, and given our above consideration of the Fish and Peterseim factors, we conclude that the trial court's decision to deny appellant's plea withdrawal motion was not unreasonable, arbitrary or unconscionable and, therefore, did not rise to the level of an abuse of discretion. See Blakemore at 219. As such, we overrule appellant's first assignment of error.
 {¶ 28} We will address together appellant's second and third assignments of error. In these assignments of error, appellant challenges his sentences on his felony convictions of aggravated vehicular homicide and aggravated vehicular assault. As noted above, the trial court imposed six years imprisonment on appellant's first-degree felony aggravated vehicular homicide conviction and five years imprisonment on appellant's second-degree felony aggravated vehicular assault conviction. The sentence on appellant's first-degree felony conviction exceeds the minimum authorized three years imprisonment for such a felony, but is below the maximum authorized ten years imprisonment for such a felony. R.C. 2929.14(A)(1). The sentence on appellant's second-degree felony conviction exceeds the minimum authorized two years imprisonment for such a felony, but is below the maximum authorized eight years for such a felony. R.C. 2929.14(A)(2).
 {¶ 29} In challenging his felony sentences, appellant first contends that the trial court erred by imposing more than the minimum authorized prison sentences on the felony convictions. Under Ohio's felony sentencing statutes, a trial court that imposes a prison sentence on a defendant must impose the minimum authorized prison sentence unless: (1) the defendant was serving a prison term at the time of the offense or had previously served a prison term; or (2) "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B).
 {¶ 30} Appellant argues that his Sixth Amendment right to a jury trial prohibits a trial court from imposing more than the minimum authorized prison sentence without the jury finding, or appellant admitting to, the factors in R.C. 2929.14(B). In support, appellant relies on Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531; and Apprendi v. NewJersey (2000), 530 U.S. 466. In Apprendi, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Otherwise, the sentence violates a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution andFourteenth Amendment due process guarantees. Apprendi at 476-478, 497. InBlakely, the United States Supreme Court defined "`statutory maximum' forApprendi purposes" as "the maximum sentence a judge may impose solely onthe basis of the facts reflected in the jury verdict or admitted by thedefendant." (Emphasis sic.) Blakely at 2537.
 {¶ 31} Appellant's arguments are in accord with State v. Montgomery,159 Ohio App.3d 752, 2005-Ohio-1018. In Montgomery, the First District Court of Appeals held that, pursuant to Apprendi and Blakely, Ohio's felony sentencing statutes "are unconstitutional to the extent that the statutes allow a trial court to increase" a defendant's sentence above the minimum authorized sentence "in the absence of jury findings or admissions by the defendant." Id. at ¶ 14.
 {¶ 32} Nonetheless, we reject appellant's contentions based on our decision in State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522. In Abdul-Mumin, we concluded that Apprendi and Blakely do not prohibit a trial court from imposing a non-minimum prison sentence under Ohio's felony sentencing statutes, even though the sentencing statutes do not require the jury to find, or the defendant to admit to, the applicable statutory factors that allow a trial court to impose a sentence above the authorized minimum. Id. at ¶ 29.
 {¶ 33} As the Twelfth District Court of Appeals stated, Ohio's felony sentencing statutes "`involve guidance for determining the impact of a sentence on public protection and proportionality — determinations that have always been made by a judge in deciding fairness and necessity of a sentence. Those are decisions that have never been consigned to juries and, thus, are not governed by the Sixth and Fourteenth Amendments to the United States Constitution[,]'" the constitutional principles underlyingBlakely and Apprendi. State v. Berry, 159 Ohio App.3d 476,2004-Ohio-6027, at ¶ 40, quoting Griffin Katz, Ohio Felony Sentencing Law (2004), 482, Section 2:22; see, also, Abdul-Mumin at ¶ 32 (Klatt, J., concurring) (emphasizing that "it has always been the province of the judge, not the jury, to determine the impact of a sentence on public protection and proportionality").
 {¶ 34} Accordingly, we previously concluded that, under Ohio's felony sentencing statutes, "[a]s long as a court sentences a defendant to a prison term within the stated minimum and maximum terms permitted by law, * * * Blakely and Apprendi are not implicated." State v. Sieng, Franklin App. No. 04AP-556, 2005-Ohio-1003, at ¶ 38. Here, the trial court sentenced appellant within the standard sentencing ranges. Thus, in accordance with Abdul-Mumin and Sieng, we conclude that Blakely andApprendi did not preclude the trial court from imposing non-minimum sentences on appellant for his felony convictions.
 {¶ 35} Appellant also challenges, under Blakely and Apprendi, the trial court's decision to impose consecutive sentences on the felony convictions. R.C. 2929.14(E)(4) governs when trial courts may impose consecutive sentences and states, in pertinent part:
If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
(b) * * * [T]he harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 36} In challenging his consecutive sentences, appellant relies onState v. Moore, Cuyahoga App. No. 83653, 2004-Ohio-5383. In Moore, the Eighth District Court of Appeals held that, under Blakely and Apprendi,
the trial court "could impose consecutive sentences only by making judicial findings beyond those either determined by a jury or stipulated to by the defendant." Moore at ¶ 19. Thus, the appellate court vacated the defendant's consecutive sentences because the defendant did not admit to the R.C. 2929.14(E)(4) findings "or otherwise waive his constitutional right to have these facts determined by a jury." Moore at ¶ 19.
 {¶ 37} Again, we reject appellant's contentions. In Abdul-Mumin, we held that consecutive sentences do not implicate Apprendi and Blakely.
Rather, we recognized that federal courts have consistently upheld consecutive sentences under constitutional scrutiny where, as here, "the individual sentence for each count does not exceed the statutory maximum for the corresponding offense." Abdul-Mumin at ¶ 30. Similarly, sinceMoore, the Eighth District Court of Appeals has held that "the findings required under R.C. 2929.14(E)(4) * * * for imposing consecutive sentences do not violate an offender's Sixth Amendment right to a trial by jury as construed in Blakely." State v. Lett, 161 Ohio App.3d 274,2005-Ohio-2665, at ¶ 47. "[C]onsecutive sentences in Ohio have never been considered `additional' punishment for guilt; therefore, any findings made by the court would not implicate Blakely[.]" Id. at ¶ 40.
 {¶ 38} Therefore, we conclude that the trial court did not sentence appellant for his felony convictions in contravention of Apprendi andBlakely or appellant's Sixth Amendment right to a jury trial or hisFourteenth Amendment due process rights. Accordingly, we overrule appellant's second and third assignments of error.
 {¶ 39} In summary, we overrule appellant's first, second, and third assignments of error. As such, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and Sadler, JJ., concur.