{¶ 23} Because I do not believe the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea, I respectfully dissent.
 {¶ 24} I recognize that the general rule is that motions to withdraw guilty pleas prior to sentencing are to be freely and liberally allowed.State v. Peterseim (1980), 68 Ohio App.2d 211, 214, 428 N.E.2d 863. However, the right to withdraw a guilty plea prior to sentencing is not absolute. State v. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715. Before ruling on a pre-sentence motion to withdraw a guilty plea, the trial court must hold a hearing to determine whether there is a reasonable and legitimate basis to allow the withdrawal. Id. at 527. The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial court. Id. It must be emphasized that abuse of discretion connotes more than a simple error of law or judgment; it implies that the trial *Page 7 
court's decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 25} I begin by adding a number of facts I believe are relevant to resolution of this case. Some time around July 1, 2005, appellant met Ramona Wilson at a church meeting shortly after his release on parole for an attempted murder conviction. At the time, Ms. Wilson was 73 years old, and her husband had recently died. About a month after they met, appellant and Ms. Wilson were married. Appellant did not disclose to Ms. Wilson that, at the time of their marriage, appellant was married to another woman.
 {¶ 26} Shortly after the marriage, apparently at appellant's urging, the two took out a home equity loan on the home that had belonged to Ms. Wilson and her deceased husband.[1] The money was divided among accounts belonging to Ms. Wilson solely, to appellant solely, and to the two jointly. Within a few weeks, appellant disappeared, taking some of the money with him. Appellant was initially charged with theft in an amount greater than $25,000, but the amount appellant was later determined to have stolen was $14,236. (Tr. II at 27.) Appellant was subsequently arrested in West Virginia and returned to Ohio for a parole violation.
 {¶ 27} Appellant was indicted by the grand jury on two charges: theft in violation of R.C. 2913.02, a second-degree felony due to the amount of money allegedly involved and the fact that the victim is elderly, and money laundering in violation of R.C. 1315.55, a third-degree felony. Ultimately, an agreement was reached whereby appellant agreed to *Page 8 
plead guilty to a charge of theft as a third-degree felony, with the money laundering charge being dismissed.
 {¶ 28} On November 20, 2006, the trial court held a hearing at which the trial court thoroughly informed appellant of the rights he was waiving by pleading guilty, and asked appellant whether he was under any conditions or taking any medication that would impair his ability to waive these rights. When the trial court informed appellant that he was giving up the right to be tried by either a jury or by the court, appellant expressed that he had not been aware that he could be tried by the court. After further discussion, appellant indicated that he wished to go forward with the plea agreement. The trial court also informed appellant of the maximum sentence that could be imposed, and specifically informed appellant that the sentence imposed by the court would not necessarily have any effect on any action to be taken by the parole board as a result of his parole violation. The court also stated that, "having heard everything today, I am satisfied that this one is going to call for a prison sentence[.]" (Tr. I at 33-34.) The court accepted the plea and ordered a pre-sentence investigation to be completed prior to sentencing.
 {¶ 29} Although represented by counsel, appellant filed two pro se motions during the period prior to his January 3, 2007 sentencing hearing. The first motion, filed December 1, 2006, was nonsensical, with appellant arguing that the trial court had no jurisdiction over him because he had never sworn allegiance to any "corporate government." The majority places a great deal of significance on this first motion, concluding that it "raises serious questions about Mr. Sellers' clarity of mind." Infra at ¶ 5. The motion is nonsensical in that it contains arguments for which there is absolutely no *Page 9 
legal basis.[2] However, the fact that there was no legal basis for the motion does not, in and of itself, provide any basis to conclude that appellant was experiencing any condition that would have called into question his ability to have understood the discussions during the November 20, 2006 plea hearing, in which he stated multiple times that he was not experiencing any conditions that would have affected his ability to knowingly and voluntarily waive his trial rights.
 {¶ 30} The second motion, filed December 20, 2006, was a motion to withdraw appellant's guilty plea pursuant to Crim.R. 32.1. In that motion, appellant argued that he wished to withdraw his guilty plea because he was not guilty of the charge, he was under the influence of medication at the time he entered the guilty plea, and "his mental and emotional state of mind has made him extremely vulnerable to the persuasion of the prosecutors to accept the agreement they suggested, thinking he would receive a probationary sentence and be able to continue on parole."
 {¶ 31} At the January 3, 2007 sentencing hearing, the trial court addressed appellant's motions. Appellant informed the court that he wanted the court to disregard his December 1 motion. As to the motion to withdraw his guilty plea, appellant stated that he was "beat up and confused" after the plea hearing, and that he had stopped taking his medication as a result. Appellant also argued that his guilty plea was the result of his failure to understand the nature of the theft charge against him. Appellant stated that he had accepted the assertions made to him that his action taking money from the joint account he held with Ms. Wilson was theft, but that he had since realized that it could not *Page 10 
have been theft because he had always fully intended to participate in the repayment of the home equity loan, and therefore could not have intended to commit theft.
 {¶ 32} The trial court then asked appellant a number of questions about appellant's memory of the November 20 plea hearing. The court asked whether appellant recalled being questioned about whether he was under any conditions or taking any medication that affected his ability to understand the proceedings against him and enter a plea, and that appellant had represented that he was not. The court also asked whether appellant remembered that he had been informed about the possibility of receiving a maximum sentence of five years, and that the court had informed him that the sentence imposed might not have any effect on any action to be taken by the parole board. Appellant acknowledged that he remembered all the things the court had asked and told him during the plea hearing.
 {¶ 33} The trial court overruled appellant's motion to withdraw his guilty plea, and then proceeded to conduct the sentencing hearing. During that portion of the hearing, the trial court stated a number of times that appellant could not be believed, and specifically stated that the two motions, including the motion to withdraw the guilty plea, were "strictly further attempts by you to manipulate the system." (Tr. II at 38.) The trial court then imposed the maximum term of incarceration of five years, and ordered restitution in the amount of $14,326, which was the amount of the proceeds of the home equity loan determined to have been placed under appellant's control.
 {¶ 34} As stated previously, the standard of review we should be employing is whether the trial court abused its discretion.Xie, supra. Ohio appellate courts, including this court, have identified a number of factors that can be used to determine whether a *Page 11 
trial court abused its discretion in the grant or denial of a pre-sentence motion to withdraw a guilty plea. These factors include: (1) whether the defendant was represented by highly competent counsel; (2) whether the trial court conducted a full Crim.R. 11 hearing before accepting the plea; (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the request; (5) the prejudice that would be suffered by appellee if the plea is withdrawn; (6) the timeliness of the motion; (7) whether the motion sets out specific reasons for the withdrawal; (8) whether the defendant understood the nature of the charges and the possible penalties; and (9) whether the defendant is possibly not guilty or has a possible defense to the charges. State v. Yander, Franklin App. No. 05AP-38,2005-Ohio-5538, reversed on other grounds by In re Ohio Crim. SentencingStatutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174;Peterseim, supra; State v. Fish (1995), 104 Ohio App.3d 236,661 N.E.2d 788. This list "is not exhaustive, and other factors will appear to trial and appellate courts depending upon the merits of each individual case." Fish at 240. However, courts have found there is no sufficient basis to allow withdrawal of a guilty plea where the defendant simply has a "change of heart" after pleading guilty, even where this change of heart occurs prior to sentencing. Yander, supra, citing State v.Drake (1991), 73 Ohio App.3d 640, 645, 598 N.E.2d 115.
 {¶ 35} The majority focuses on only two of the identified factors. First, the majority considers appellant's claim that the medication he was taking interfered with his ability to understand the nature of the proceedings against him and the effect of his guilty plea. The majority engages in a speculative discussion as to what medicine appellant may have been taking (Neurontin) and the purpose for taking such medicine although such *Page 12 
was never developed in the record. Given the extremely thorough colloquy between the trial court and appellant during the November 20, 2006 hearing on all of the issues relating to the entry of appellant's guilty plea, which included appellant's averment that he was not taking any medication that affected his ability to understand the proceedings, as well as the fact that the trial court was in a position to view appellant's demeanor and evaluate appellant's ability to understand the proceedings, I do not believe the trial court abused its discretion by rejecting appellant's claim that the medication he was taking impaired his ability to enter a guilty plea, particularly in the absence of any medical evidence offered by appellant regarding the effects of any medication he was taking.
 {¶ 36} In addition, at the hearing on the motion to withdraw, appellant expressed that he did not adequately understand the effect his guilty plea would have, because his trial counsel had told him he would be able to continue on parole while receiving probation in this case. Appellant also stated that the claim made in his filed motion that his mental and emotional condition had made him vulnerable to persuasion by the prosecutors was actually referring to his counsel rather than the prosecutors. Appellant's counsel contradicted appellant's claim that counsel did not explain the consequences of the guilty plea.[3] Even if his counsel had told him he would continue on parole and receive probation, the trial court made it clear during the plea hearing that there would be no guarantee that appellant's parole would not be affected, and also stated that his intention to impose prison time, but appellant nevertheless agreed to enter the guilty plea. *Page 13 
 {¶ 37} The second factor considered by the majority is appellant's claim that he has a defense to the charge. In Yander, we discussed the effect of a defendant's claim of innocence on a trial court's denial of a pre-sentence motion to withdraw a guilty plea. The focus in considering this factor is not on the merits of the claimed defense, but rather turns on consideration of whether: (1) the defendant is claiming actual innocence, or whether the motion to withdraw the plea is based on a defense that has nothing to do with actual guilt or innocence; (2) the reasons supporting the claim of innocence arose subsequent to the time the defendant entered the guilty plea; and (3) the defendant has viable evidence to support the claim of innocence. Yander, supra, citingState v. Kramer, Mahoning App. No. 01-C.A.-107, 2002-Ohio-4176.
 {¶ 38} The basis for appellant's claim of innocence was that he had fully intended to help Ms. Wilson repay the home equity loan he induced her to obtain, and therefore could not have had the intent necessary to support a charge of theft. Thus, appellant is not denying that the money was taken, but only that the state cannot prove that he committed theft because he did not intend to keep the money without repaying it. Appellant argued in his motion that he had simply accepted his counsel's assertion that he could be found guilty of theft under these circumstances, but it is clear that appellant knew about the nature of the charges and the facts of his case prior to the time he entered his guilty plea. Therefore, the reasons for appellant's claim of innocence arose subsequently to the time appellant entered his guilty plea. Finally, I do not believe appellant pointed to any viable evidence to support his claim that he intended to help repay the loan, particularly given that the facts presented during the two hearings showed *Page 14 
that appellant disappeared shortly after the loan was obtained, and appellant had to be brought back to the Columbus area after he was arrested in West Virginia.
 {¶ 39} I believe consideration of the other factors set forth inYander compels a finding that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea. For example, the trial court held a full hearing in compliance with Crim.R. 11 prior to accepting appellant's guilty plea. At that hearing, the court was very careful to ensure that appellant understood the nature of the charges against him, as well as the rights he was giving up by pleading guilty. Furthermore, the court provided appellant a full opportunity to be heard on the motion to withdraw the plea. Finally, notwithstanding appellant's claim that his counsel told him he would be sentenced to probation, nothing in the record supports a conclusion that appellant's counsel represented him in anything other than a highly competent manner.
 {¶ 40} The trial court found all of the assertions made by appellant lacked credibility, and specifically concluded that the motion was made for the purpose of manipulating the system. The trial court was in the best position to determine whether appellant had a medical condition that affected his ability to understand the proceedings against him, and to determine the credibility of the statements made by appellant in his motions and during the hearings. Applying the case law regarding pre-sentence motions to withdraw guilty pleas, I do not believe we can find that the trial court abused its discretion in denying appellant's motion.
 {¶ 41} Because I do not believe that the trial court's judgment that appellant failed to provide a reasonable and legitimate basis for withdrawing his guilty plea was *Page 15 
unreasonable, arbitrary, or unconscionable, I would affirm the trial court's decision. Therefore, I respectfully dissent.
[1] The majority glosses over the precise relationship between appellant and Ms. Wilson by describing the loan as being between appellant and "a woman close to him." Infra ¶ 4.
[2] In fact, the arguments made in the motion are of the sort commonly made in motions filed by litigants who believe they are subject only to natural law, and that courts therefore have no jurisdiction over them.
[3] The majority identifies two ways to "understand" appellant's claim that his counsel had informed him he would receive probation: that appellant was so impaired by medication that he believed that is what counsel was telling him, or that counsel did, in fact, tell him he would receive probation. The trial court viewed this claim in a third way — that the claim lacked credibility. *Page 1