[Cite as *State v. P.P.*, 2017-Ohio-1120.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                        :

       Plaintiff-Appellee,                    :                  No. 16AP-42
                                              (C.P.C. No. 15CR-728)
v.                                                   :

[P.P.],                                              :                  (ACCELERATED CALENDAR)

       Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on March 28, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee. **Argued:** *Steven L. Taylor*.

**On brief:** *Todd W. Barstow*, and *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, P.P., from a judgment of the Franklin County Court of Common Pleas sentencing him after the trial court denied his motion to withdraw guilty plea.

{¶ 2} On February 12, 2015, appellant was indicted on one count of rape, in violation of R.C. 2907.02, one count of sexual battery, in violation of R.C. 2907.03, and one count of gross sexual imposition, in violation of R.C. 2907.05. The rape and sexual battery counts alleged that appellant "on or about July 19, 2013 to July 18, 2014," engaged in "sexual conduct, to wit: fellatio, with M.P." The gross sexual imposition count alleged

that appellant "on or about July 19, 2012 to July 18, 2013," engaged in "sexual contact with M.P."

{¶ 3}   On September 28, 2015, appellant entered a guilty plea to one count of gross sexual imposition.  At the start of the plea hearing, the prosecuting attorney represented to the court that "[w]e worked out a plea agreement where the defendant will plead to Count Three of the indictment, gross sexual imposition.  In exchange for that plea the state will nolle Counts One and Two."  (Sept. 28, 2015 Tr. at 2-3.)

{¶ 4}   During the plea hearing, the prosecutor recited the following facts regarding the underlying charges.  In December 2014, "detectives received a sexual abuse referral from Franklin County Children Services in regards to [M.P.] being sexually abused by her father, the defendant."  In January 2015, M.P. was interviewed at Nationwide Children's Hospital, and "[a]t that time she disclosed her father had sexually abused her when she was 13 and 14 years of age."  M.P "disclosed the last incident happened when she was 14 years old when [appellant] came downstairs and put his thing in her mouth."  M.P. "related that she punch[ed] her doll and he stopped and walked away."  (Sept. 28, 2015 Tr. at 3.)

{¶ 5}   According to M.P., "the first time anything happened her father pulled her into his chest, touched her chest on top of the skin and then grabbed her by the waist while lying in bed."  M.P. disclosed that "on another occasion her father touched her down there on top of her skin and then touched her chest."  (Sept. 28, 2015 Tr. at 4.)

{¶ 6}  Detectives subsequently spoke with appellant by phone, and appellant "stated * * * he was aware of the allegations and denied the sexual abuse allegations involving his daughter."  Detectives discussed with appellant "the polygraph at that time and he expressed his doubts in regards to that test."  Detectives spoke again with appellant "[l]ater in January," and "he came in of his own freewill and spoke with detectives."  (Sept. 28, 2015 Tr. at 4.)

{¶ 7}   Appellant "admitted an incident had occurred while lying in bed, but * * * he thought it was his wife and only grabbed her by the waist and did not touch her chest. He related he realized it was his daughter and sent her to her room."  (Sept. 28, 2015 Tr. at 4.)  Appellant "related * * * it was a possibility that he touched her chest, but then again related he did not touch her there."  (Sept. 28, 2015 Tr. at 4-5.)  Appellant "denied the

other allegations and made comments about his wife sleeping on the other sofa in the downstairs living room and she would have woken up." (Sept. 28, 2015 Tr. at 5.)

{¶ 8} Detectives again discussed with appellant "the option of a polygraph." Appellant "asked several times" why detectives were "continuing" if his daughter "did not want to proceed with the investigation?" (Sept. 28, 2015 Tr. at 5.) Later that month, detectives asked appellant if he would be willing to take a polygraph "and he agreed." Detectives administered the polygraph and appellant was "found to be deceptive and deliberately distorting the polygraph recording in an attempt to defeat the test." Appellant "asked about taking a polygraph for a second time." (Sept. 28, 2015 Tr. at 6.)

{¶ 9} Detectives subsequently spoke with M.P. and her mother about the results of the polygraph. M.P. "related she's telling the truth about what happened and that she just had to get it off her chest because it had been bothering her. The detectives and [M.P.] spoke about the incident and she stated that she remembers the time on the clock of when it happened at 3:42 a.m." (Sept. 28, 2015 Tr. at 6.)

{¶ 10} Detectives then spoke with appellant "again over the phone and he informed the detectives he was going to make an appointment to speak with a psychologist to help them through this." Appellant "again asked why the investigation was continuing," and offered that "his wife did not want to pursue charges." During a phone conversation, appellant "asked the detective if the investigation could be closed if he sought help and related that he wanted this to go away." (Sept. 28, 2015 Tr. at 7.)

{¶ 11} Appellant was arrested in February 2015, and "again spoke to detectives. He stated at that time he wanted some sort of plea before confessing so he knew what he would be looking at. He spoke of getting help and counseling, but wanted to know if the detectives would then drop the charges." Detectives "did forensics on [appellant's] phone in which they found several history searches of ways to beat a polygraph and also for pedophile counsel." (Sept. 28, 2015 Tr. at 7.)

{¶ 12} The prosecutor also noted "past charges of gross sexual imposition." (Sept. 28, 2015 Tr. at 5.) According to the prosecutor, appellant entered a plea "in regard to an incident involving a niece, the mother's sister's daughter that happened nine years ago." (Sept. 28, 2015 Tr. at 5-6.) Appellant "related he had pled guilty to assault due to

[advice] from his attorney and the fact it was taking a toll on them mentally and financially." (Sept. 28, 2015 Tr. at 5.)

{¶ 13} After plaintiff-appellee, the State of Ohio, provided the above recitation of facts, the trial court engaged in a plea colloquy with appellant and accepted his guilty plea to one count of gross sexual imposition. The court ordered a nolle prosequi as to the remaining two counts. The court further ordered a presentence investigation report ("PSI"), and scheduled sentencing in the matter for October 29, 2015.

{¶ 14} On October 28, 2015, appellant filed a motion to withdraw his guilty plea. In the accompanying memorandum in support, appellant argued that he "believes he now remembers the evening on which the allege[d] rape occurred and that he can now explain that the charge was a mistake." Further, that he "did not remember this sooner * * * due to the evening being outside the time frame of the allegations." On November 3, 2015, the state filed a memorandum contra the motion to withdraw.

{¶ 15} On November 24, 2015, the trial court conducted a hearing on the motion to withdraw guilty plea. During the hearing, counsel for appellant argued that appellant "had remembered something that occurred out of the time that the indictment is talking about, that he never thought of it and he's now faced with it and now he realizes that must be where the mistake must have occurred." (Nov. 24, 2015 Tr. at 3.)

{¶ 16} In response, the state argued that M.P. "is a teenage girl who was here the day of the plea and was incredibly emotional about the idea of testifying. And that's why the plea was offered the way that it was." (Nov. 24, 2015 Tr. at 4.) Asserting that prejudice to M.P. "is great," the prosecutor argued that appellant "had ample opportunity to decide upon a plea," and that "[i]t was something we talked about several weeks leading up to the day of the trial." (Nov. 24, 2015 Tr. at 4-5.) The prosecutor further argued that, based on "defendant's PSI as well as the motion written by his counsel * * * this is a mere change of heart. He felt that * * * his wife, the mother of [M.P.] was standing by him. * * * And after the guilty plea he felt that she was not going to stand by him anymore." (Nov. 24, 2015 Tr. at 5.) With respect to appellant's "newly found defense," the prosecutor argued that such defense was "something that he's come up with in his PSI after he has been charged and accused of this for many months if not a year at this point." (Nov. 24, 2015 Tr. at 6.)

{¶ 17} Following a discussion on the record, the trial court denied appellant's motion to withdraw guilty plea. On December 17, 2015, the trial court conducted a sentencing hearing. By judgment entry filed December 15, 2015, the trial court sentenced appellant to 18 months incarceration.

{¶ 18} On appeal, appellant sets forth the following assignment of error for this court's review:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY OVERRULING HIS MOTION TO WITHDRAW HIS PLEA OF GUILTY.

{¶ 19} Under his single assignment of error, appellant challenges the trial court's ruling denying his motion to withdraw guilty plea. Appellant acknowledges the trial court considered the relevant factors in ruling on a pre-sentence motion to withdraw guilty plea, but argues that the court abused its discretion in denying his request.

{¶ 20} Crim.R. 32.1 states as follows: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 21} Under Ohio law, a trial court's ruling on a pre-sentence motion to withdraw guilty plea is "within a trial court's discretion." *State v. Xie,* 62 Ohio St.3d 521, 526-27 (1992). In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* at 527. Accordingly, a trial court "must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* Further, "[a]bsent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed." *Id.*

{¶ 22} In reviewing a trial court's ruling on a pre-sentence motion to withdraw a guilty plea, an appellate court considers a number of non-exhaustive factors, including:

> (1) whether the prosecution would be prejudiced if the plea were vacated; (2) whether the offender was represented by highly competent counsel; (3) the extent of the Crim.R. 11 hearing; (4) whether there was a full hearing on the motion to

> withdraw the offender's guilty plea; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the motion was made within a reasonable time; (7) whether the motion set forth specific reasons for the withdrawal; (8) whether the accused understood the nature of the charges and possible penalties; and (9) whether the accused was perhaps not guilty or had a complete defense to the crime.

*State v. Jones,* 10th Dist. No. 09AP-700, 2010-Ohio-903, ¶ 10, citing *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995).

{¶ 23} A court's consideration of these factors "involves a balancing test," and "[n]o single factor is dispositive." *State v. Inskeep,* 2d Dist. No. 2016-CA-2, 2016-Ohio-7098, ¶ 26.

{¶ 24} In the present case, the trial court discussed each of the above factors in ruling on the motion to withdraw guilty plea. In addressing the issue of prejudice to the state, the trial court found it "clear" that M.P., the teenage daughter of appellant, "is traumatized and is having an unbelievably hard time with the thought of having to testify against her father. It was clear to the Court when she was here on the day that the plea was taken." (Nov. 24, 2015 Tr. at 9.) Observing that "there is a question as to whether [M.P.] would even be able to" testify, the trial court concluded that "the prejudice to the state in allowing the defendant to withdraw his guilty plea would be great." (Nov. 24, 2015 Tr. at 9-10.) The trial court also found "no question * * * the defendant was represented by highly competent counsel," citing the fact that trial counsel "has been a defense lawyer for a very long time and * * * practices in front of me on countless occasions and has always done a very good job." (Nov. 24, 2015 Tr. at 10.)

{¶ 25} The trial court noted it had conducted a "full Criminal Rule 11 hearing * * * on the record," and concluded it had "complied with Criminal Rule 11." The trial court further indicated it was conducting "a full hearing on this motion," and that it "is giving full and fair consideration to the motion to withdraw." (Nov. 24, 2015 Tr. at 10.) Having "read through the motion, * * * read the memorandum contra," as well as the PSI, the trial court represented it had "given this motion full and fair consideration." (Nov. 24, 2015 Tr. at 11.)

{¶ 26} With respect to the timeliness of the motion, the trial court observed that the motion "was filed a month after the plea was taken." Further, citing the fact the

indictment was filed "in February," and that the plea was made "September 28th, 2015," the trial court found "the defendant certainly had enough time to consider what he was doing with respect to taking this plea or agreeing to a plea." (Nov. 24, 2015 Tr. at 11.)

{¶ 27} The trial court also considered appellant's reasons for the motion to withdraw as "articulated in the motion," including a "newly discovered defense that he now recalls the events of what may have happened." (Nov. 24, 2015 Tr. at 11.) In addressing this issue, the court discussed its review of the PSI, observing in part: "[I]t's clear to me in the PSI there is an attempt to try to justify out what may have occurred, but when I read what [M.P.] said occurred, she described the last time it happened was early in the morning and she was sleeping downstairs in the living room." (Nov. 24, 2015 Tr. at 11-12.) The court noted that M.P. "stated her father came downstairs while she was sleeping and put his thing in her mouth." The trial court found nothing in the motion that "would supply the Court with anything other than defendant thinks he may know what had happened at that time which goes also to whether the accused might have a complete defense to the charge or charges." The trial court further observed, based on a review of the PSI, that "the defendant is concerned about his wife * * * no longer supporting him now that he had entered the guilty plea." The court viewed this as merely "a change of heart." (Nov. 24, 2015 Tr. at 12.)

{¶ 28} The trial court next indicated it had "engaged in a very long discussion with defendant at the plea hearing as part of taking the plea making sure that he understood the nature of the charge, the effect of the plea and the maximum penalties that could be imposed." (Nov. 24, 2015 Tr. at 12-13.) The court, noting the fact appellant provided "affirmative answers on all of those," found it clear from the record that he entered the plea "knowingly, intelligently[,] and voluntarily." (Nov. 24, 2015 Tr. at 13.)

{¶ 29} With respect to the issue whether appellant had a complete defense to the charge, the trial court deemed it "incredibly problematic" that appellant "kept asking for the opportunity or * * * wanted the opportunity to speak with his daughter and he could clear the whole thing up." The court found that such behavior "indicates there is no defense, but rather an attempt to change the mind of a very young child." (Nov. 24, 2015 Tr. at 13.)

{¶ 30} On appeal, appellant does not dispute that his trial counsel had extensive criminal experience; further, he acknowledges the trial court "appears to have complied with" Crim.R. 11, and that the court conducted a full hearing on his motion to withdraw and gave a full and fair consideration to the motion. Appellant suggests that prejudice to the state would have been minimal; further, that any delay in filing the motion to withdraw should be attributed to trial counsel and not appellant. Appellant also notes that he outlined in detail his specific reasons for the motion to withdraw, and argues he would have a complete defense to the charges if successful in his claim that M.P. was mistaken in her allegations.

{¶ 31} A review of the record supports the trial court's findings that appellant was represented by competent counsel at the plea hearing, and that the court conducted a full hearing in compliance with Crim.R. 11. Further, the record supports the trial court's finding that appellant knowingly, voluntarily, and intelligently waived his rights at the time of the plea. The court also afforded appellant a full hearing on his motion to withdraw, and fully considered the reasons proffered by appellant. The trial court was arguably justified in expressing skepticism as to the timing of the motion to withdraw, which appellant filed one day before sentencing and approximately one month after he entered his plea.

{¶ 32} As set forth above, in his motion to withdraw, appellant argued he had a newly discovered defense, i.e., that it was his thumb that had gone into his daughter's mouth. The trial court expressed doubts as to this claim, finding "an attempt to try to justify * * * what may have occurred." Rather, the court found persuasive the state's argument that the real basis for the motion was a change of heart by appellant because his wife no longer supported him. Specifically, in considering the PSI, the court concluded that it was "clear that the defendant is concerned about his wife * * * no longer supporting him now that he * * * entered the guilty plea." (Nov. 24, 2015 Tr. at 12.) The trial court also expressed concern, based on a review of the PSI, that appellant was seeking the opportunity to change M.P.'s testimony. As noted above, the court deemed it "incredibly problematic" and "disturbing" that appellant "kept asking for the opportunity or * * * wanted the opportunity to speak with [M.P.] and he could clear the whole thing up." The

court concluded "there is no defense, but rather an attempt to change the mind of a very young child." (Nov. 24, 2015 Tr. at 13.)

{¶ 33} Under Ohio law, " 'a mere change of heart * * * is insufficient justification' to withdraw a guilty plea, even prior to sentence." *State v. Yander,* 10th Dist. No. 05AP-38, 2005-Ohio-5538, ¶ 27, *rev'd on other grounds, In re Ohio Criminal Sentencing Statutes Cases,* 109 Ohio St.3d 313, 2006-Ohio-2109, quoting *State v. Drake,* 73 Ohio App.3d 640, 645 (8th Dist.1991). *See also State v. Moore,* 7th Dist. No. 06 CO 74, 2008-Ohio-1039, ¶ 13 ("It is axiomatic that a mere change of heart has been found to be an insufficient basis for granting a presentence motion to withdraw a plea."); *State v. Salah,* 2d Dist. No. 2008 CA 51, 2010-Ohio-1613, ¶ 17 ("there is no indication from the record that [defendant's] decision to file a motion to withdraw his pleas was anything other than a mere 'change of heart,' which is not a sufficient basis upon which a defendant can rely in order to successfully withdraw his guilty pleas").

{¶ 34} In the present case, in the PSI cited by the trial court, the author of that document reports that appellant "explained this change is a result of how his wife was standing by him until his guilty plea." Appellant also related to the author that "he sees himself as the victim and everything can be resolved with one phone call to his daughter." (PSI at 13.) On review of the record and consideration of the relevant factors, we conclude the trial court reasonably determined that appellant's motion to withdraw was premised on a mere change of heart, which constitutes an insufficient basis for withdrawal of a plea. Accordingly, we find no abuse of discretion by the trial court in denying the motion to withdraw guilty plea.

{¶ 35} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

_____