[Cite as *State v. Daver*, 2017-Ohio-8862.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 104745 and 105144**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# JAMES DAVNER

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-602142-A

**BEFORE:** E.A. Gallagher, P.J., E.T. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** December 7, 2017

**ATTORNEYS FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116
Robert H. Williams
21430 Lorain Road
Fairview Park, Ohio 44126


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Gregory J. Ochocki
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

{¶1} In this consolidated appeal, defendant-appellant James Davner appeals from (1) the judgment of conviction (Appeal No. 104745) and (2) the trial court's denial of his postsentence motion to withdraw his guilty pleas (Appeal No. 105144), after he pled guilty to one count of felonious assault, one count of abduction and one count of gross sexual imposition. Davner contends that his guilty pleas were induced by the ineffective assistance of his trial counsel and were not knowingly, intelligently and voluntarily made. He also contends that his aggregate six-year, ten-month sentence was not clearly and convincingly supported by the record. For the reasons that follow, we reverse the trial court's judgment, vacate Davner's guilty pleas and remand the case for further proceedings.

**Factual and Procedural Background**[1]

{¶2} On December 18, 2015, K.H. filed a complaint in the Lyndhurst Municipal Court alleging that Davner had sexually assaulted her. K.H. alleged that she and her boyfriend had been drinking with Davner the evening of November 21, 2015, and that while she was in the bathroom, intoxicated and vomiting, Davner raped her. Davner originally told police that he had never had any sexual contact with K.H. After DNA test results came back indicating that his semen was found on K.H., Davner admitted having

---

[1]The statement of facts set forth herein is based on the testimony presented at the hearing on Davner's motion to withdraw his guilty pleas, discussed *infra*.

to sex with K.H. but claimed that it was consensual. With the exception of an OVI and several minor traffic offenses, Davner had no prior criminal history.

{¶3} Davner retained attorney Daniel Margolis ("Margolis") to represent him. Davner testified that when he first learned of the sexual assault allegations against him, he researched criminal defense attorneys on the internet. He gave his wife, Laurel, attorney Margolis' name and number and asked her to call him "if anything were to happen." Davner testified that he selected Margolis because "[h]e had very good reviews on his website."

{¶4} Davner was arrested at his home on December 18, 2015. After Davner was arrested, Laurel contacted Margolis. She paid him $1,000 to represent Davner in the municipal court proceedings and to get a bond set. Laurel testified that she gave Margolis the telephone numbers for K.H.'s boyfriend and the boyfriend's mother and showed him several social media postings K.H. and K.H.'s boyfriend had made that Laurel contended contradicted with what they alleged had occurred. Laurel testified that Margolis told her that he would hire an investigator. Davner was thereafter released on bond.

{¶5} On January 4, 2016, a Cuyahoga County Grand Jury indicted Davner on two counts of rape, one count of kidnapping with a sexual motivation specification and two counts of gross sexual imposition arising out of Davner's alleged sexual assault of K.H.

{¶6} On January 11, 2016, Davner met with Margolis at his office and signed a fee agreement, agreeing to pay Margolis an additional $20,000 to represent him on the

"pretrial portions of the criminal charge." Under the terms of the fee agreement, Margolis would receive an additional $1,000 per day if the case went to trial. Davner paid Margolis $2,000 and Davner's parents paid the $18,000 balance. Davner testified that Margolis told him he would hire an investigator and asked Davner to email him a statement detailing what had occurred on the night of the alleged assault. Davner prepared a statement and emailed it to Margolis a few days later. On January 20, 2016, Davner was arraigned, his bond was continued, and he was placed on court-supervised release.

{¶7} Davner claimed that the meeting he had with Margolis in January 2016 was the only time he "really met with" Margolis to discuss his case. He stated that his only other interactions with Margolis were a couple of email messages forwarding discovery materials, brief text messages and telephone calls and a couple minutes conversing with Margolis before and after pretrial conferences. Davner testified that he called Margolis "maybe once a week" to get an update regarding "what's going on," "what he's doing with the case" but that he rarely got a call back. He testified that when he did so, it would be "very brief," i.e., that Margolis would simply say, "[n]othing is going on," "waiting for discovery" or "I'll see you at the next pretrial." Davner testified that he repeatedly told Margolis that he was innocent and that he wanted to go to trial and did not want to plea.

{¶8} On January 20, 2016, Margolis submitted a written demand for discovery pursuant to Crim.R. 16 to the state. On January 25, 2016, the state provided initial

responses to Davner's discovery request and filed its own written demand for discovery. The state filed supplemental discovery responses on April 14, 2016 and May 13, 2016. From January 28, 2016 to May 18, 2016, the trial court conducted eight pretrial conferences. Trial was originally set for April 25, 2016 but was continued to May 24, 2016 "to complete discovery." Margolis never responded to the state's discovery request, never filed any motions, never interviewed any witnesses and never hired an investigator.

{¶9} Davner appeared for each of the eight pretrials held in the case. He testified that, at each of the pretrial conferences, Margolis would greet Davner, let him know he was there, then go into the back for an hour or two while Davner waited in the waiting room. When he returned, Margolis would generally say something to the effect of "this was routine" or "still waiting for discovery" or if something had been received in discovery, what it was. He stated that Margolis forwarded him certain discovery materials, including the police report, a recording of the 911 call and the victim's medical records, but that Margolis never reviewed them with Davner. Davner testified that when he would ask Margolis how the discovery materials impacted his case, he "never really got a direct answer on anything." He testified that Margolis would simply respond, "it's a coin flip" or "it's up in the air." When Davner asked Margolis if he could come talk to him about the case, Margolis responded that there was nothing to discuss.

{¶10} Margolis disputed Davner's characterization of their interactions. He denied that he told the Davners he would hire an investigator and stated that there were no

witnesses who would have been helpful to Davner to interview. He testified that, whenever he received any discovery materials from the state, he provided copies to Davner, if permitted, or read them to him and "explain[ed] what was going on." He testified that he had "face-to-face" meetings with Davner at each of the pretrial conferences, emailed Davner multiple times and regularly communicated with Davner by phone and text.[2] He testified that there were multiple pretrial conference and continuances due to difficulties in getting medical records from the state and that he did not respond to the state's discovery request for "tactical reasons."

{¶11} Margolis denied that Davner demanded that the case go to trial. He testified that Davner's "frequent demand" was for the case to be dismissed, but that that "abated somewhat as the case dragged on." He stated that "[w]e didn't go to trial because [Davner] didn't want to go to trial." Margolis testified that if the case were to have been tried, Davner would have had to pay him another $7,000 under the fee agreement and that that "never even came up * * * because of the overwhelming weight of the evidence against Mr. Davner."

{¶12} In May 2016, Davner took a polygraph test in the hopes of convincing the prosecutor to drop the charges against him. On May 11, 2016, Margolis said he would

---

[2]Margolis testified that, during the course of his representation of Davner, he spoke with Davner on the phone 36 times for a total of four hours and 21 minutes and exchanged 192 texts with him. An exhibit listing the texts that were exchanged between Margolis and Davner was introduced into evidence. The exhibit shows that more than 160 texts were exchanged between December 28, 2015 and May 24, 2016, when Davner entered his guilty pleas. However, most of these exchanges were brief and involved logistics or scheduling issues. No call log or phone records were introduced.

forward the results to the prosecutor.  At the May 18, 2016 pretrial — the last pretrial scheduled before the May 24, 2016 trial date — the prosecutor did not appear.  The following day, Davner texted Margolis and asked whether he had heard from the prosecutor.  Margolis responded that he had not and would let Davner know when he heard from him.  In the week following the May 18, 2016 pretrial conference, the state issued ten trial subpoenas.

**{¶13}**  Margolis did not meet with Davner in preparation for trial.  He did not file any motions in limine, submit a witness or exhibit list or otherwise prepare to try the case on May 24.  On the afternoon of May 23, Davner texted Margolis and asked him whether he should still appear in court the following morning since Margolis had not heard back from the prosecutor.  He also inquired about the ten subpoenas that were listed on the docket.  Margolis stated that he was "[s]till waiting on the prosecutor" and told Davner to listen to the 911 tape again.  Margolis stated that "t]he jury will hear this.  It will probably be the first thing they hear" and indicated that it was "problematic."  The two men exchanged several telephone calls that evening.  With respect to whether the trial was going forward, Davner testified that Margolis told him, "Just be there and we'll see what goes on with it."

**{¶14}**  Davner testified that when he appeared for trial the following morning, he expected that nothing would happen and that everything would be pushed back, as it had in the past, because the prosecutor had not appeared at the last pretrial conference.

Davner testified that had he been aware that the case was going to trial, he would have worn a suit and would have brought his family members with him.

{¶15} The state made no plea offers until the morning of trial. Nevertheless, Margolis testified that he did not prepare for trial because he believed Davner would enter a plea: "There was not going to be a trial so I didn't do anything to prepare." He could not recall when he first talked to Davner about a possible plea but claimed that it was "certainly * * * before April 25." He testified that he also spoke with Davner about a possible plea on May 17, 2016, advising him that "the evidence was very strong against him" and that "he was looking at a high risk/high reward kind of situation" if the case went to trial. Margolis stated that he and the prosecutor "had been talking about a plea bargain for some time, and Mr. Davner knew that and approved of that." He testified that if there had been no plea agreement, he planned to request a reasonable continuance to adequately prepare for trial. There is nothing in the record that indicates that he communicated this plan to Davner. Davner denied having previously discussed any possible pleas with Margolis.

{¶16} Although trial was scheduled to begin at 9:00 a.m. on May 24, 2016, Margolis did not arrive at the courthouse until 9:44 a.m. He testified that "[i]t's not uncommon and it's regrettable, but it did happen." After he spoke with the prosecutor, Margolis handed Davner an index card on which he had jotted down two plea offers he received from the state. The index card listed the offense levels, tier levels and the titles

of the offenses that were "on the table."[3]   Margolis testified that he "presented [Davner] with his options," explained the charges, the "import and pros and cons of each of those options," "the difference between Tier I and Tier III" and the "possible sentences that were applicable to each option"[4] and then left him alone to decide what to do.   He further testified that he told Davner that "given the weight of the evidence I thought * * * he should strongly consider a plea" but that, "at the end of the day," it was Davner's decision and "I do what my client requests in terms of making that decision."   Davner testified that he received the plea offers at "about 11:00 a.m." and was given approximately 20 or 30 minutes to decide what to do. Margolis testified that he came back to Davner with the two plea offers by 9:50 or 9:55 a.m. and that Davner had "much more" than 30 minutes, i.e., perhaps   an hour-and-a-half or more, to make a decision. Margolis did not ask for a continuance to allow Davner additional time to consider the plea offers.

{¶17} Davner denied that Margolis explained the offenses to which he would be pleading guilty.   Davner testified that Margolis told him that he had to decide between the two plea offers because if he went to trial he would lose and would go to prison for a

---

[3]Although the index card was admitted as an exhibit at the hearing, it was not included in the record forwarded to this court on appeal.   Accordingly, we do not know exactly what information was communicated to Davner on the index card or the specifics of the other plea offer Davner chose not to accept.

[4]Margolis was not asked to explain, and, therefore, did not testify regarding exactly what he told Davner about the two plea offers and the potential consequences of accepting one of the plea offers.

long time, i.e., "like 8 to 10 years." Davner indicated that when Margolis handed him the index card, he explained that if Davner accepted one of the plea offers, he would, "most likely," get probation or, under the "worst-case scenario," would get a two- or three-year sentence and be out on judicial release in six months. Davner testified that it was his understanding that he would receive the same sentence under either plea option. Margolis denied telling Davner that he would "most likely" receive probation if he accepted one of the plea offers.

{¶18} After Margolis left Davner alone to consider the plea offers, Davner called his mother, his wife and his employer. He called his employer to find out if he could keep his job if he went to prison for six months. He called his mother, Daniela Davner, and told her he needed to pick from two plea options and asked for her advice as to what he should do. Daniela testified Davner was "very upset" and that he could only talk for a few minutes because "he had to pick right then." Daniela suggested he consult with another attorney. Davner testified that when Margolis came back to see what he had decided, he asked if he could get another attorney. Margolis said that "it would not help."

{¶19} Davner then called his wife, Laurel. He testified that he asked her to conduct a "Google" search to determine the meaning of felonious assault, abduction and gross sexual imposition and the difference between a Tier I and Tier III sex offender. Laurel testified that she received a "frantic call" from Davner, asking her to "Google" two potential plea offers he had just received because he did not understand what the offenses

were, what it meant to register as a sex offender or what impact accepting one of the plea offers would have on his job or degree. She indicated that Davner was "very stressed," "confused" and "frustrated with his attorney." Before she could conduct the research he requested, Davner told her that he had to get off the phone. Laurel was not able to give him any advice as to what she thought he should do.

{¶20} At 10:22 a.m. Margolis texted Davner "[t]he deals are not changing." At 11:13 a.m., Davner replied, "Just 10 more min and I'll have [an] answer."

{¶21} Davner testified that while he was on the phone with Laurel, Margolis came back and told him "the prosecutor is ready" and "[t]hey want an answer." Davner stated that he asked Margolis how much time he could have to decide and that he replied that Davner needed to "make a decision now." Davner told Margolis which of the plea options he had selected and communicated his selection to the prosecutor.

{¶22} Under the terms of the plea agreement, Davner would plead guilty to an amended count of felonious assault in violation of R.C. 2903.11(A)(1), an amended count of abduction in violation of R.C. 2905.02(A)(1) (removing the sexual motivation specification), one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) and the remaining counts would be nolled. It was also agreed that the counts did not merge for sentencing.

{¶23} Davner testified that he decided which plea offer to accept based on the length of time he would have to register as a sex offender, i.e., under one plea offer he

would have had to register as a sex offender once a year for 15 years, under the other plea offer, he would have had to register every 90 days for life.

{¶24} At 11:28 a.m., Davner texted Margolis and asked if he could "ask about me going less often to CSR [court-supervised release]?" Margolis responded, "Yes." Davner testified that he inquired about CSR because he thought that he would be sentenced to probation. At 12:24 p.m. Margolis texted Davner, "Come into the courtroom." Davner turned off his phone and went into the courtroom.

{¶25} After the state and Margolis set forth the terms of the plea agreement on the record, the trial judge proceeded with the plea colloquy. In response to the trial judge's preliminary questions, Davner indicated that he was a citizen, had a driver's license, was 30 years old, had a bachelor's degree in mechanical engineering, could read and write, was not under the influence of any drugs, alcohol or medication and understood what was happening in court that day.

{¶26} The trial judge advised Davner of his constitutional rights and confirmed that he understood the rights he would be waiving by entering his guilty pleas. The trial judge identified each of the offenses to which Davner would be pleading guilty, outlined the penalties he faced on each count, including the maximum prison sentence for each offense, and confirmed that Davner understood the potential penalties associated with each count. With respect to the potential sentences Davner could receive, the trial judge indicated as follows:

> THE COURT: All right. Now, in advising you of the possible penalties under Count 1 as it's amended, you are looking at a potential prison

sentence where there's a presumption in favor of prison of anywhere from two to eight years; do you understand that?

THE DEFENDANT:    Yes, Your Honor.

* * *

THE COURT: Okay. In Count 3 as it's amended to a felony of the third degree, you are looking at a potential maximum prison sentence of anywhere from 9, 12, 18, 24, 30, up to 36 months.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And Count 4, a felony of the fourth degree, anywhere from 6 to 18 months.

THE DEFENDANT: Yes, Your Honor.

* * *

THE COURT: And that you are agreeing that for purposes of merger, that none of these counts will merge for purposes of sentencing.    So what that means is that you will be sentenced on each count and your maximum potential prison sentence could be 12-and-a-half years, if you received a maximum sentence and it was run consecutive.    So your sentence on each of these counts based on an agreement that they do not merge, your maximum    consecutive sentence could be 12-and-a-half years in prison; do you understand that?

THE DEFENDANT: Yes, Your Honor.

* * *

[DEFENSE COUNSEL]: Yes, Your Honor.    But just for clarification, the Court could also run his sentences concurrent —

THE COURT:    Correct.

[DEFENSE COUNSEL]: — if he is sentenced to prison.

THE COURT:    That's correct.    But I advised him of the maximum potential sentence that he could face.

[DEFENSE COUNSEL]:    Absolutely.

THE COURT:    So that's why I'm telling him 12-and-a-half years, but there is a minimum sentence which would be two years.    Okay.    So do you understand?

THE DEFENDANT: Yes, Your Honor.

* * *

THE COURT: * * * [N]one of these charges that you're pleading guilty to as they've been amended are mandatory prison time; just Count 1, as I have already explained is a presumption in favor of prison.    So you could also be placed under a community control sentence for up to five years, but if you violate the terms of the sentence, you could receive a more restrictive sentence, including prison time; do you understand?

THE DEFENDANT: Yes, Your Honor.

{¶27} Davner confirmed that no threats or promises had been made to him to induce him to change his pleas other than what had been stated on the record, he stated that he understood that there was no promise of a particular sentence and he indicated that he was satisfied with the services rendered by his trial counsel.

{¶28} The trial judge found that Davner had been informed of his constitutional rights, that he understood "the nature of the charges, the effect of a plea and the maximum penalties which may be imposed" and that his guilty pleas would be made knowingly, intelligently and voluntarily.

{¶29} Davner entered his guilty pleas to one count of felonious assault, one count of abduction and one count of gross sexual imposition pursuant to the plea agreement, and the remaining counts were nolled.    The trial judge accepted his guilty pleas and

referred the matter for a presentence investigation report. A sentencing hearing was scheduled for the following month.

**{¶30}** Davner, Margolis, the victim's boyfriend and the state spoke at the June 20, 2016 sentencing hearing. After considering those statements and reviewing the PSI, the letters submitted by Davner's wife and parents and a report from Davner's therapist, the trial court sentenced Davner to six years on the felonious assault count, three years on the abduction count and ten months on the gross sexual imposition count. The sentences on the felonious assault and abduction counts were to run concurrently to one another but consecutive to the sentence imposed on the gross sexual imposition count, resulting in an aggregate prison sentence of six years and ten months. The trial court properly advised Davner of postrelease control, ordered payment of court costs and classified Davner as a Tier I sex offender. On June 23, 2016, the trial court entered its sentencing journal entry.

**{¶31}** On July 19, 2016, Davner filed (1) a motion to withdraw his guilty pleas and (2) a direct appeal of the judgment of conviction. On August 1, 2016, this court remanded the matter for consideration of Davner's motion to withdraw his guilty pleas.

**{¶32}** In his motion to withdraw his guilty pleas, Davner argued that his guilty pleas were invalid because he did not enter them knowingly, intelligently and voluntarily or with the effective assistance of counsel. He claimed that Margolis had pressured him into entering guilty pleas because he was not prepared to try the case and that his guilty pleas were based on misinformation regarding his likely sentence and eligibility for judicial release. The state opposed the motion, arguing that Davner could not

demonstrate manifest injustice.  The trial court held an evidentiary hearing on the motion (the "evidentiary hearing").[5]  Davner, Laurel, Daniela and Margolis testified at the hearing.

{¶33} On October 11, 2016, after consideration of Davner's motion to withdraw his guilty pleas, the state's brief in opposition, the evidence and arguments presented at the evidentiary hearing and the post-hearing briefs, the trial court denied Davner's motion.  The trial court did not explain its reasoning in denying the motion.

{¶34} Davner appealed the trial court's order denying his motion to withdraw his guilty pleas.  In this consolidated appeal, he raises the following assignments of error for review:

> ASSIGNMENT OF ERROR NO. I:
> The trial court erred by denying appellant's motion to withdraw his guilty plea.

> ASSIGNMENT OF ERROR NO. II:
> Appellant's sentence is clearly and convincingly not supported by the record and is contrary to law.

**Law and Analysis**

{¶35} In his first assignment of error, Davner contends that his guilty pleas were induced by the ineffective assistance of his trial counsel and were not knowingly, intelligently and voluntarily made, resulting in manifest injustice.  He argues that the trial court should have permitted him to withdraw his guilty pleas because Margolis was

---

[5]The hearing was conducted over parts of three days, August 29, September 1 and September 2, 2016.

"totally unprepared for trial" and failed to "fully and properly advise [Davner] regarding the consequences of his plea." Specifically, Davner contends that Margolis misled Davner regarding the sentence he would receive if he pled guilty and gave him inaccurate or incomplete information regarding judicial release. He also contends that Margolis failed to properly explain each plea option and the ramifications of his agreement, as a condition of Davner's pleas, that the counts to which he pled guilty would not merge for purposes of sentencing. Davner asserts that the trial court's denial of his motion to withdraw his guilty pleas was arbitrary and contrary to the facts developed at the evidentiary hearing.

**Motion to Withdraw Guilty Plea**

{¶36} A motion to withdraw a guilty plea is governed by Crim.R. 32.1. Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Accordingly, a defendant who seeks to withdraw a guilty plea after sentence has been imposed must demonstrate "manifest injustice."[6] *State v. Smith*, 49 Ohio St.2d 261, 361

---

[6] Davner argues, in the alternative, that because the trial court failed to advise him of his appellate rights at the sentencing hearing, his sentence was void and his request to withdraw his guilty pleas should have been evaluated under the more liberal standard applied to presentencing motions to withdraw guilty pleas. Davner did not raise this issue below. Rather, he argued that the trial court should grant his motion to withdraw his guilty pleas "to correct manifest injustice." An issue not raised in the trial court forfeits all but plain error. Further, a party is not entitled to take advantage of an error that he or she invited or induced. *See, e.g., State v. Dawson*, 8th Dist. Cuyahoga No. 104509, 2017-Ohio-965, ¶ 38.

Even if we were to consider the issue, however, we would find no error. As this court has

N.E.2d 1324 (1977), paragraph one of the syllabus. Manifest injustice is a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), that is evidenced by "'an extraordinary and fundamental flaw in the plea proceeding,'" *State v. McElroy*, 8th Dist. Cuyahoga Nos. 104639, 104640 and 104641, 2017-Ohio-1049, ¶ 30, quoting *State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 8; *see also State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 41 (8th Dist.); *State v. Stovall,* 8th Dist. Cuyahoga No. 104787, 2017-Ohio-2661, ¶ 17 ("'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'"), quoting *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. Thus, postsentence withdrawal of a guilty plea is permitted "only in extraordinary cases." *State v. Rodriguez*, 8th Dist. Cuyahoga No. 103640, 2016-Ohio-5239, ¶ 22.

**{¶37}** The determination of whether the defendant has demonstrated manifest injustice is within the sound discretion of the trial court. *Vinson* at ¶ 42, citing *Smith* at paragraph two of the syllabus. Accordingly, we will not reverse a trial court's ruling on

previously held, a trial court's failure to advise a defendant of his or her appellate rights at sentencing renders the sentence voidable, not void. *See, e.g., State v. Gum*, 8th Dist. Cuyahoga No. 101496, 2015-Ohio-1539, ¶ 8. Where the trial court fails to advise a defendant of his appellate rights at sentencing, the remedy is to have the trial court reenter the judgment of conviction against the defendant, thereby reinstating the time within which the defendant may file a notice of appeal pursuant to App.R. 4(A). *See State v. Gum*, 8th Dist. Cuyahoga No. 100156, 2014-Ohio-401, ¶ 5. Following his sentencing, Davner retained appellate counsel who timely filed a notice of appeal. The trial court's failure to advise Davner of his appellate rights at sentencing is, therefore, harmless error. *See, e.g., State v. Bauldwin*, 8th Dist. Cuyahoga No. 96703, 2011-Ohio-6435, ¶ 15 ("any error in failing to inform appellant of his appellate rights under Crim.R. 32(B) was harmless because he was able to effect a timely appeal through counsel and has not shown any prejudice").

a postsentence motion to withdraw a guilty plea unless the court abused its discretion. *Id.*

### Ineffective Assistance of Counsel

**{¶38}** Ineffective assistance of counsel can constitute a manifest injustice warranting a withdrawal of a guilty plea. *See, e.g., State v. Montgomery*, 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4. However, where a defendant enters a guilty plea, he or she waives ineffective assistance of counsel except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent and voluntary. *Vinson* at ¶ 30; *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11. Thus, where a defendant has entered a guilty plea, a defendant can prevail on a claim of ineffective assistance of counsel only by demonstrating (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, that caused his guilty plea to be less than knowing, intelligent and voluntary and (2) that there is a reasonable probability that, but for counsel's deficient performance,_the defendant would not have pled guilty to the offenses at issue and would have, instead, insisted on going to trial. *Williams* at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the

syllabus. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**Requirement that Guilty Pleas be Made Knowingly, Intelligently and Voluntarily**

{¶39} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996); *see also State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7. As the Ohio Supreme Court explained in *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462:

> A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision. The benefit to a defendant of agreeing to plead guilty is the elimination of the risk of receiving a longer sentence after trial. But, by agreeing to plead guilty, the defendant loses several constitutional rights. * * * The exchange of certainty for some of the most fundamental protections in the criminal justice system will not be permitted unless the defendant is fully informed of the consequences of his or her plea. Thus, unless a plea is knowingly, intelligently, and voluntarily made, it is invalid.

*Id.* at ¶ 25.

{¶40} Whether a guilty plea was entered into knowingly, intelligently and voluntarily is based on the totality of the circumstances. *See, e.g., State v. Sojourney*, 8th Dist. Cuyahoga No. 92087, 2009-Ohio-5353, ¶ 14; *State v. Lockhart*, 8th Dist. Cuyahoga No. 90754, 2009-Ohio-2395, ¶ 6.

**The Plea Colloquy**

**{¶41}** In considering whether a criminal defendant knowingly, intelligently and voluntarily entered a guilty plea, we first review the record to determine whether the trial court complied with Crim.R. 11(C). *State v. Kelley*, 57 Ohio St.3d 127, 128, 566 N.E.2d 658 (1991). Crim.R. 11(C) sets forth certain constitutional and procedural requirements with which the trial court must comply prior to accepting a guilty plea. Under Crim.R. 11(C)(2), the trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and doing all of the following:

> (a)_ Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b)_ Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c)_ Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

The purpose of Crim.R. 11(C) is "'to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty.'" *State v. Woodall*, 8th Dist. Cuyahoga No. 102823, 2016-Ohio-294, ¶ 12, quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

**{¶42}** The trial court must strictly comply with those provisions of Crim.R. 11(C)(2) that relate to the waiver of constitutional rights. *Veney*, 120 Ohio St.3d 176,

2008-Ohio-5200, 897 N.E.2d 621, at syllabus. As to the nonconstitutional aspects of Crim.R. 11(C)(2), which includes a defendant's right to have an understanding of the "the nature of the charges" and "the maximum penalty involved" and to be informed of and understand the effect of a guilty plea, substantial compliance is required. *Veney* at ¶ 14; *State v. Moore*, 8th Dist. Cuyahoga No. 101658, 2015-Ohio-1026, ¶ 12; *State v. Petitto*, 8th Dist. Cuyahoga No. 95276, 2011-Ohio-2391, ¶ 6, 9. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications_of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990)._ If a trial court fails to substantially comply with one of the nonconstitutional aspects of Crim.R. 11(C)(2), a determination must be made as to whether the trial court partially complied or completely failed to comply the requirement at issue. *Clark*, 119 Ohio St.3d 239, 2008-Ohio-2748, 893 N.E.2d 462, ¶ 32. If the trial court partially complied, the plea is properly vacated only if the defendant demonstrates prejudice. *Id.* If the trial court completely failed to comply, the plea must be vacated; a showing of prejudice is not required. *Id.*

**{¶43}** "[T]here is no easy or exact way" to determine a defendant's subjective understanding. *State v. Cardona*, 8th Dist. Cuyahoga No. 75556, 1999 Ohio App. LEXIS 6064, *12 (Dec. 16, 1999), citing *State v. Carter*, 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979). However, if a defendant "'receives the proper information, then we can ordinarily assume that he understands that information.'" *Cardona* at *12, quoting *Carter* at 38. A defendant may learn of information not relayed to him by the trial court

from other sources, such as his attorney. *State v. Rogers*, 8th Dist. Cuyahoga No. 103227, 2016-Ohio-1382, ¶ 18, citing *State v. McCown*, 8th Dist. Cuyahoga No. 69683, 1996 Ohio App. LEXIS 4801, *19 (Oct. 31, 1996).

**{¶44}** When a trial court complies with Crim.R. 11(C)(2) in accepting a plea, there is a presumption that the defendant's plea was knowingly, intelligently and voluntarily made. *See, e.g., State v. Alexander*, 8th Dist. Cuyahoga No. 103754, 2016-Ohio-5707, ¶ 11; *State v. Murray*, 12th Dist. Brown No. CA2015-12-029, 2016-Ohio-4994, ¶ 20. A defendant seeking to withdraw the plea has the burden of rebutting that presumption by demonstrating that the plea is infirm. *Alexander* at ¶ 11, citing *State v. Hall*, 8th Dist. Cuyahoga No. 55289, 1989 Ohio App. LEXIS 1602 (Apr. 27, 1989).

**{¶45}** Here, there is no dispute that the trial court fully complied with Crim.R. 11(C)(2) with respect to Davner's constitutional rights. At issue in this case is whether, due to the alleged ineffective assistance of counsel, Davner's pleas were made under duress and whether Davner lacked a sufficient understanding of the nature of the offenses, the penalties he could receive and the effect and consequences of his guilty pleas for his pleas to have been entered knowingly, intelligently and voluntarily.

### Understanding of Nature of the Offenses and the Effect and Consequences of Guilty Pleas

**{¶46}** In this case, during the plea colloquy, the trial court identified the offenses to which Davner would be pleading guilty and confirmed with Davner that these were the offenses to which he was agreeing to plead. The trial court also identified the potential penalties associated with each offense. The trial court did not, however, explain the

offenses to Davner or otherwise ensure that he had an understanding of what those offenses entailed. Two of the three offenses to which Davner pled guilty — felonious assault and abduction — were amended counts not part of the original indictment. Although Margolis testified at the evidentiary hearing that he explained the charges to Davner, Davner denied this and claimed that he did not have an understanding of the offenses before he entered his guilty pleas. There is nothing in the transcript from the plea hearing that indicates that the trial court, Margolis, the state (or anyone else) explained the nature of the charges to Davner before he entered his guilty pleas or specifically informed Davner that his guilty pleas operate as "a complete admission" of his guilt. Crim.R. 11(B)(1). Margolis advised the court that he had "gone over" with Davner "his constitutional rights that he would be waiving by entering a plea" and the sex offender registration obligations and also advised the court that he believed that Davner's plea would be "knowingly, voluntarily and intelligently made," but he did not mention anything about having explained to Davner what the state would have had to prove to convict him of the offenses to which he would be pleading guilty. The trial court did not ask Davner whether he understood the nature of the charges or the effect of his guilty pleas and did not ask whether he had any questions generally.

{¶47} A trial court is not necessarily required to explain the elements of each offense to the defendant or to specifically ask the defendant if he or she understands the charges. *See, e.g., State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 12; *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 14. A trial

court's determination that a defendant understands the charge can be based on the totality of the surrounding circumstances. *Id.* Further, the trial court may presume that defense counsel informed the defendant of the nature of the charges, absent an indication to the contrary. *See, e.g., State v. Philpott*, 8th Dist. Cuyahoga No. 74392, 2000 Ohio App. LEXIS 5849, *8-9 (Dec. 14, 2000). In this case, there is an indication to the contrary.

**{¶48}** Likewise, Crim.R. 11(C)(2)(b) does not require a verbatim statement or "rote recitation" that a guilty plea operates as a complete admission of the defendant's guilt to comply with the rule. *See, e.g., State v. McCollins*, 8th Dist. Cuyahoga No. 87182, 2006-Ohio-4886, ¶ 9; *State v. Mallon*, 11th Dist. Trumbull No. 98-T-0032, 1999 Ohio App. LEXIS 6131, *13-14 (Dec. 17, 1999). Further, "[a] defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, syllabus; *Reeves* at ¶ 12 "In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Griggs* at syllabus.

**{¶49}** Although the trial judge did not explicitly inform Davner that his guilty pleas operated as a complete admission of his guilt to the charges at issue, she did inform Davner that, by entering his guilty pleas, he was giving up his right to have the state prove his guilt and that the trial court could proceed directly with judgment and sentencing after he entered his guilty pleas. Davner indicated that he understood this.

**{¶50}** Davner did not claim he was innocent at the plea hearing, he did not ask any questions at the plea hearing and there is nothing else in the transcript from the plea hearing that suggests that Davner was confused or under any type of duress prior to entering his guilty pleas. At the plea hearing, Davner confirmed that no threats or promises had been made to him to induce him to change his pleas, stated that he understood that there was no promise of a particular sentence and indicated that he was satisfied with the services rendered by his trial counsel.

**{¶51}** At the evidentiary hearing, Davner testified that although he had not been physically threatened to change his pleas, given the short time period he was given to decide whether to accept a plea offer, he did, in fact, feel threatened; he just "didn't realize it was a threat at the time." He further testified that he "was so distressed by everything, by [Margolis] giving me so short of a time to make a decision that * * * it was kind of like a blur." When asked if he understood the judge's questions, Davner replied, "[T]hey came out in English and I understood what they were, but what did they mean to me, like it didn't really mean anything to me." Davner testified that he did not ask Margolis if he could withdraw his guilty pleas prior to sentencing because he "didn't even know that was an option."

**Counsel's Inaccurate Prediction of Davner's Sentence**

**{¶52}** Davner also argues that his pleas were not knowingly, intelligently and voluntarily entered because they were based on Margolis' representation that if Davner accepted one of the state's plea offers, he would "most likely" receive probation or, under

the "worst-case scenario," would receive a two- or three-year sentence and would be out on judicial release in six months.   He contends that were it not for this "false advice," he would not have entered his guilty pleas.

{¶53}   Margolis vehemently denied that he ever told Davner that it was most likely he would receive probation. However, even assuming that Margolis had done so, an attorney's mere inaccurate prediction of a defendant's sentence does not constitute ineffective assistance of counsel sufficient to negate a guilty plea:

> "A good faith but erroneous prediction of sentence by defense counsel does not render the plea involuntary.   Where the representations made by defense counsel were hopeful, good faith estimates, not promises, the fact that defendant may have had expectations of leniency is not sufficient, absent evidence that the government induced such expectation, to justify withdrawal of_the plea."

*Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, at ¶ 32, quoting *State v. Sally*, 10th Dist. Franklin No. 80AP-850, 1981 Ohio App. LEXIS 10295, *10-11 (June 11, 1981); *see also State v. Longo*, 4 Ohio App.3d 136, 139-140, 446 N.E.2d 1145 (8th Dist.1982) (counsel's error in "predict[ing] a sentencing result based on an educated judgment" that "did not pan out" did not render his assistance ineffective); *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 10 (8th Dist.) ("A lawyer's mistaken prediction about the likelihood of a particular outcome after correctly advising the client of the legal possibilities is insufficient to demonstrate ineffective assistance of counsel."); *State v. McMichael*, 10th Dist. Franklin Nos. 11AP-1042, 11AP-1043 and 11AP-1044, 2012-Ohio-3166, ¶ 31 (counsel's "'mere inaccurate prediction of a sentence does not

demonstrate the deficiency component of an ineffective assistance of counsel claim'"), quoting *State v. Glass*, 10th Dist. Franklin No. 04AP-967, 2006-Ohio-229, ¶ 34.

**{¶54}** Davner has not shown that, in advising Davner that he was likely to receive a sentence ranging from probation to two or three years, Margolis did anything more than provide Davner with an "educated guess" as to what his sentence might be in light of the relevant facts and circumstances, including Davner's lack of any significant criminal history. Furthermore, the record reflects that Davner entered his guilty pleas with full knowledge of the potential sentences he could receive. The trial court informed Davner of the potential sentencing range on each of the counts to which he was pleading guilty and further explained that, based on his agreement that the counts would not merge for sentencing, he could receive a potential maximum aggregate sentence of 12 and a half years — if he were to receive a maximum sentence on each offense and the sentences were to be run consecutively. Davner indicated that he understood this. Further, in reviewing the potential sentencing range associated with the felonious assault count, the trial court advised Davner that there was a "presumption of prison" as to that count. Davner indicated that he understood this as well. Accordingly, Davner was not denied effective assistance of counsel and his pleas were not rendered unknowing, unintelligent or involuntary based solely on his trial counsel's faulty prediction of his sentences. *See Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, at ¶ 31-35.

**Counsel's Failure to Provide Complete Information Regarding Judicial Release**

{¶55} Davner's argument with respect to the information — or lack of information — he allegedly received from Margolis regarding his eligibility for judicial release, however, presents a slightly different issue. A defendant does not enter a knowing, intelligent or voluntary guilty plea if the plea is premised on incorrect legal advice. *See, e.g., Engle*, 74 Ohio St.3d at 527-528, 660 N.E.2d 450.

{¶56} Davner argues that although the trial judge informed him of the potential maximum sentences could he could receive during the plea colloquy, he did not understand, based on his attorney's prior representations regarding judicial release, that if he were to receive a sentence of five or more years, he would not be eligible for judicial release until after he served five years of that sentence. Here, there is evidence in the record to support Davner's claim that Margolis failed to provide him with complete, accurate legal advice regarding his eligibility for judicial release before he entered his guilty pleas. Davner testified that Margolis informed him that he would be eligible for judicial release after serving six months of his sentence but did not explain that, if he received a sentence that was five years or longer, he would not be eligible for judicial release until after he served five years of his sentence. The state presented no evidence disputing this claim — Margolis did not testify as to what he told Davner regarding judicial release — and there is nothing in the record to suggest that Davner was ever informed that if he received a sentence longer than that predicted by counsel, i.e., if he were to be sentenced to five years or more, he would not be eligible for judicial release until after he served five years of his sentence.

**{¶57}** As this court has stated, "it is well settled that a guilty plea may be invalidated where the defendant is given misinformation regarding judicial release." *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 15, citing *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365. The state points out that, in these cases (and others cited by Davner), it was the trial court that gave the defendant inaccurate information regarding judicial release during the plea hearing — not trial counsel. Here, the trial court did not mention judicial release at the plea hearing.[7] Regardless of whether it is the trial court or trial counsel who provides inaccurate information regarding judicial release, when an erroneous understanding of the applicable law induces a defendant's guilty plea, the plea generally is not entered knowingly and intelligently. *See Engle* at 527-528; *Williams* at ¶ 15 ("if a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently, but the defendant must demonstrate prejudice resulting from the erroneous representation, i.e., that but for erroneous information, the plea would not have been made"); *see also State v. Persons*, 4th Dist. Meigs No. 02CA6, 2003-Ohio-4213, ¶ 11-16 (defendant's guilty pleas were void where trial counsel did not correctly advise defendant as to his eligibility for judicial release, which was a material term of plea agreement, and the trial court and the state's misunderstanding of

---

[7] Unless incorporated into a plea agreement, the trial court is under no obligation to inform a defendant regarding his eligibility for judicial release at the plea hearing. If, however, it does so, and the defendant relies on that information to his prejudice in entering a guilty plea, the information must be accurate. *See, e.g., Williams* at ¶ 15; *State v. Oliver*, 6th Dist. Sandusky No. S-10-040, 2011-Ohio-5305, ¶ 12.

defendant's eligibility for judicial release further compounded the error). Davner presented credible evidence establishing a reasonable probability that but for counsel's incomplete advisements regarding judicial release he would not have entered his guilty pleas.

**Counsel's Lack of Preparation for Trial**

{¶58} Davner also argues that he was coerced into accepting one of the plea deals offered by the state due to his counsel's failure to prepare for trial. In this case, although no plea offers had yet been extended, Margolis admitted that he was not prepared to try the case on the scheduled trial date and had not asked for a continuance. Where, as here, counsel has admitted that he is not prepared for trial, courts have upheld claims of ineffective assistance of counsel. *See, e.g., State v. Biggers*, 118 Ohio App.3d 788, 790-791, 694 N.E.2d 108 (10th Dist.1997) (defendant received ineffective assistance of counsel where the record established that defense counsel "had done little or nothing in the four months during which he had been assigned to the case" and at the start of trial, asked for a continuance because he "admitted unequivocally that he was not prepared to go to trial"). While Margolis stated that he would have asked for a continuance if Davner had rejected the state's plea offers, such that his lack of preparation would not have prejudiced Davner, there was no guarantee that the trial court would have granted a continuance. The trial court had already continued the trial date once.

**Conclusion**

{¶59} Following a thorough review of the record, considering the unique facts and totality of the circumstances in this case, including: the limited time frame in which Davner was given to consider the state's plea offers; the incomplete information Davner received from counsel regarding judicial release; Davner's demonstrated lack of a full and complete understanding, prior to the plea hearing, of the offenses to which he would be pleading guilty and the consequences of his guilty pleas; the limited information Davner received regarding the nature of the offenses and the effect of his guilty pleas at the plea hearing; counsel's admission that he was not prepared to try the case if Davner rejected the state's plea offers and Davner's testimony that, but for this confluence of events, he would not have entered his guilty pleas, we conclude that (1) Davner did not knowingly, intelligently and voluntarily enter his guilty pleas, (2) withdrawal of his guilty pleas is necessary to correct manifest injustice and (3) the trial court, therefore, abused its discretion in denying Davner's motion to withdraw his guilty pleas.

{¶60} Davner's first assignment of error is sustained. We reverse the trial court's judgment, vacate his guilty pleas and remand the case for further proceedings.

{¶61} Based on our resolution of Davner's first assignment of error, his second assignment of error is moot.

{¶62} Judgment reversed; case remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS

EILEEN T. GALLAGHER, J., DISSENTING:

**{¶63}** I respectfully dissent from the majority's finding that Davner's plea was not knowingly, intelligently, and voluntarily made.

**{¶64}** I recognize that this court has previously held that a guilty plea may be invalid where the defendant is given misinformation regarding judicial release. *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650; *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365; *See also State v. Persons*, 4th Dist. Meigs No. 02CA6, 2003-Ohio-4213. However, I do not find *Williams*, *Ealom*, or *Persons* to be applicable to the facts of this case. In *Williams, Ealom*, and *Persons*, the inaccurate misstatements of law that caused the defendants to believe that they were eligible for judicial release occurred on the record during the plea proceedings. In addition, in each case, the trial court contributed to the defendant's misunderstanding by making its own inaccurate statements on the record.

{¶65} After careful review of the transcript, it is evident that no misstatement of law occurred on the record in this case. In addition, the trial court did not misadvise Davner about his eligibility for judicial release during the plea hearing. Thus, unlike the facts addressed in *Williams, Ealom*, and *Persons,* the alleged misrepresentation of Davner's eligibility for judicial release occurred during a private conversation between Davner and counsel.

{¶66} Under these circumstances, it is my belief that the majority's holding improperly relies on Davner's self-serving testimony and conversations that are not part of this record. As this court has held, "[a] self-serving affidavit by the moving party is generally insufficient to demonstrate manifest injustice." *Richmond Hts. v. McEllen*, 8th Dist. Cuyahoga No. 99281, 2013-Ohio-3151, ¶ 14, citing *State v. Simmons*, 8th Dist. Cuyahoga No. 91062, 2009-Ohio-2028, ¶ 30. *See also State v. Yearby,* 8th Dist. Cuyahoga No. 79000, 2002 Ohio App. LEXIS 199 (Jan. 24, 2002) (When a defendant asserts that his guilty plea was involuntary, "a record reflecting compliance with Crim.R. 11 has greater probative value than a petitioner's self-serving affidavit.").

{¶67} In this case, the trial court engaged in a comprehensive Crim.R. 11 colloquy with Davner, and a fair reading of the record does not permit me to conclude that he entered his plea less than freely and voluntarily and with full knowledge of the ramifications of his plea. Moreover, the trial court held an extensive hearing on Davner's motion to withdraw his guilty plea. During the hearing, defense counsel was questioned at length about the alleged representations he made to Davner about his

eligibility for judicial release. Under oath, defense counsel adamantly denied advising Davner that the "worst [prison term] he would get would be 30 days" based on his eligibility for judicial release. While Davner offered testimony to the contrary, "the trial court is in the best position to assess the credibility of the defendant's assertions." *State v. Hunter*, 8th Dist. Cuyahoga No. 99472, 2013-Ohio-5022, ¶ 18. Thus, I would defer to the trial court's assessment of credibility.

{¶68} For the foregoing reasons, I would find that Davner has not presented credible evidence that he was induced to enter a guilty plea based on trial counsel's erroneous representations as to the applicable law. Accordingly, I would affirm the trial court's judgment denying Davner's motion to withdraw his guilty plea.